C. H. DEXTER & SONS, INC., Plaintiff, Appellant,

v.

KIMBERLY-CLARK CORPORATION, Defendant, Appellee.

No. 5812.

United States Court of Appeals
First Circuit.

June 22, 1961.

Peter L. Costas, West Hartford, Conn., with whom Robert L. Thompson, Boston, Mass., and T. Clay Lindsey, Hartford, Conn., were on brief, for appellant.

Richard F. Walker, Boston, Mass., with whom Paul J. Glaister, Neenah, Wis., was on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This is an action for patent infringement in which the district court found the patent invalid and not infringed. The patent, F. H. Osborne, No. 2,414,-833, was issued January 28, 1947. Claims 1 and 2 were for a tea bag paper with predominantly thermoplastic fibers on the top, or "fat" side, and entirely non-thermoplastic fibers on the bottom. This distribution permitted self-adhesion on folding the fat side upon itself between heated clamping jaws without fouling the jaws. As recited in the application,

"Since packaging machines using the heat-sealing principle usually have heated jaws operated under pressure, *it is important that the thermoplastic material be kept out of contact with the hot jaws, other-*

*wise the material would stick to the jaws and pull the seal apart and also gum up the jaws.*[1] This invention overcomes this difficulty by producing a thermoplastic sheet *one surface* of which is *entirely non-thermoplastic,* thus permitting the surface used next to the jaws to be free from thermoplastic material when the thermoplastic surfaces are placed face to face prior to heat sealing."

It was further stated that the paper had a suitable high degree of porosity, and that the self-sealing would withstand emersion in boiling water.[2] Claims 3 and 4 were for a process of manufacturing the paper. The patent was highly successful and respected. In 1958 defendant-appellee commenced manufacturing the accused paper, and this suit ensued.

■ By inadvertence the district court confused some of the evidence.[3] This error, in our opinion, destroys the ground upon which the court found invalidity of claims 1 and 2. Defendant asserted other grounds, which the court did not pass upon. In view of our concurrence in the finding of non-infringement, we will not pass upon them either, but will merely vacate the judgment with respect to invalidity (paragraph 3) and confine ourselves to the other issue.

Osborne's method of manufacture was to produce a water-laid paper by beginning with non-thermoplastic fibers next to the wire and superimposing thermoplastic fibers, but in a mixture increasingly concentrated, so that they would not fall off on drying. This was all accomplished within a single head-box.

1. All italics throughout this opinion are supplied.

2. If manufactured strictly in accordance with the patent, without additional treatment to provide wet strength, the paper would disintegrate. Plaintiff contends that under ordinary paper-making practice this treatment was obvious, and that lack of mention did not affect the patent.

The district court did not reach this question, nor do we.

3. The court found that it had been microscopically determined that plaintiff's paper was not free of thermoplastic fibers on the bottom side, and drew certain conclusions therefrom. This evidence related to the accused paper. There was no evidence of any kind that plaintiff's product was so contaminated.

In order to escape the process claims defendant used two head-boxes, the second having a vacuum attachment which drew the thermoplastic fibers into mixture. In our opinion this appears to be a more cumbersome and less efficient process, but plaintiff conceded that it avoided infringement of the process claims, and claims 3 and 4 were stipulated out of the case. Defendant's method drew some of the thermoplastic fibers through to the bottom, where their presence was undesirable for the reasons set forth in Osborne's application. Defendant accordingly conducted a further procedure to wipe off these contaminating fibers. The wiping process was not completely successful. Plaintiff's expert testified from a random sampling of 105 pieces of the accused paper that the bottom side averaged 24/1000 of one per cent thermoplastic fiber.

Claim 1 of the patent reads in part, "the top of the sheet having thermoplastic fibers predominant, * * * extending down into the non-thermoplastic fibers but not to the bottom of the sheet, *the bottom being composed entirely of non-thermoplastic * * * fibers.*" Claim 2 is identical with respect to the italicized language. The question, therefore (there are others which we do not reach), is whether defendant's paper was simply a colorable departure so as to fall within the doctrine of equivalents, or whether the departure removed it from the patent.

We find nothing in the specifications which suggests that the word "entirely" may be modified in any degree. On the contrary, in addition to what we have already quoted, it is stated,

"The bottom of the sheet is, and must be, composed *entirely of non-thermoplastic fibers* for reasons which will be pointed out more fully hereinafter."

"*The thermoplastic fiber is * * completely exhausted* before the bottom is reached. In this way the *thermoplastic fibers* are very well bound into the sheet but *are not permitted in any way to be present in the under surface thereof.*"

Twice in claim 3 (and again twice in claim 4), the paper to be produced is described as having "*thermoplastic fibers * * * gradually diminishing to zero at the bottom * * *"*

These are formidable recitations for the plaintiff to overcome. Conceding, for the sake of argument, that something less than "entirely" and "zero" could still fall within the terms of this patent, the burden is clearly upon the plaintiff to show that defendant's amount of contamination was inconsequential under any circumstance. This burden was not met by percentiles, no matter how striking they may appear. Nor was it accomplished by showing that there are releasing agents, or special types of jaws, which will permit satisfactory operation with a contaminated paper. At the least plaintiff had the burden of showing by qualified testimony that, regardless of the nature of the sealing equipment or other conditions, the amount of thermoplastic fiber on the bottom of the accused paper was to every practical operating extent negligible and insignificant.

Plaintiff produced no such evidence. Defendant's expert, on the other hand, testified that without special precautions defendant's paper would cause an accumulation of thermoplastic fiber on the jaws of the machine and in time gum it up.[4] While this witness does not overly impress us in this respect, plaintiff produced no contradictory testimony, although warned in advance, since its own expert was the one who showed that the accused paper was not "entirely" free.

4. As Mr. Osborne described this effect in connection with showing invention, if thermoplastic fibers "seep through to the jaws . . . they have a tendency to get the jaws coated with thermoplastic fiber, which causes them to have to be shut down to be cleaned."

Even if, as a witness for defendant testified, defendant in fact attempted to make a paper entirely uncontaminated on the bottom, infringement is not by intent, but by results. Plaintiff failed to establish the results.

Judgment will enter vacating paragraph 3 of the judgment of the District Court, but otherwise affirming. Costs to appellee.