**AMERICAN TECHNICAL MACHINERY CORP.,** (Substituted for American Brush Machinery Company, Inc.), Plaintiff,

v.

**Sylvester CAPAROTTA, doing business as Kings Brush Co. and as Kings Brush & Mop Co., Defendant.**

No. 60-C-984.

United States District Court
E. D. New York.
March 31, 1964.

John M. Calimafde, New York City, for plaintiff.

Samuel Brodsky, New York City, for defendant.

MISHLER, District Judge.

Plaintiff's amended complaint states a claim for patent infringement of Patent No. 2,742,327. Plaintiff, at pre-trial (order dated 4/9/63), narrowed the claimed infringement to claims 2, 6, 13, 16 and 17. The answer pre-dates the amended complaint and is deemed the answer to the amended complaint (pre-trial order). Defendant attacks the validity of the patent on the following grounds:

1. The invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application in the United States (par. 6). See 35 U.S. C. § 102(b).

2. The invention was known or used by others in this country or described in

a printed publication before invention by plaintiff (par. 7). See 35 U.S.C. § 102 (a).

3. The subject matter is contained in patents granted to others filed in the United States before the invention thereof by plaintiff (par. 8). See 35 U.S.C. § 102(e), 35 U.S.C. § 103.

4. The patent does not describe an "operable invention" (par. 8); and the claims are "vague, indefinite, and uncertain" (par. 9), and "the claims are broader than the invention" (par. 11).

Application for letters patent for a Fully Automatic Machine for making brushes was filed April 20, 1951, by Theodore Marks (Serial No. 222,007) Exhibit 1A. Letters Patent No. 2,742,327 was issued April 17, 1956. On April 25, 1951, one Hertzberg filed an application for letters patent for an invention under the title "Machine For Making Brushes". In August 1953, the Examiner suggested the language which eventually was numbered claims 16 and 17, for the purpose of interference. Letters patent were issued to Theodore Marks on April 17, 1956, and assigned by mesne assignments to plaintiff. The following patents were cited:

| | | |
|---|---|---|
| Weber | 286,511 | 1883 |
| Thacher | 1,845,209 | 1932 |
| Boardman | 1,851,537 | 1932 |
| Lipps | 1,888,352 | 1932 |
| Epp | 1,941,343 | 1933 |
| Scully | 2,105,334 | 1938 |

PLAINTIFF'S CLAIM TO PATENT PROTECTION

Plaintiff claimed invention of an automatic wire brush manufacturing machine. Briefly described, the machine is designed to produce wire-twisted brushes of varying lengths not exceeding approximately 36″. An upper and lower wire are continuously fed into the machine from two spools; the upper and lower wires engage pre-cut fibers or bristles fed from a hopper; the two wires holding the fibers or bristles in a more or less firm position, are then drawn into a pre-determined length; the wires holding the bristles are then twisted by a rotating chuck; the twisted-wire brush is then cut. The brush is then complete and ready for packaging, except that in some varieties handles are added.

Plaintiff rests on claims 2, 16 and 17 as typical of the asserted claims. To understand the claims, examination of their component parts is helpful.

Claim 2 [1] describes a fully-automatic machine for forming a brush by having spaced sets of fibers held between twisted wires. The mechanism contains the following elements: (1) a continuous under wire free at one end, (2) a continuous upper wire free at one end, (3) a fiber feeding device, or hopper, that places the pre-cut fibers between the upper and lower wire, (4) a method of pulling the fibers, evenly distributed, and firmly held to a pre-determined length, (5) a twisting operation to lock the fibers between the twisted wires, and (6) a cutting device.

Claim 16 [2] describes the machine pro-

1. In a fully automatic machine for forming a brush having spaced sets of fibers held between a pair of twisted wires, means for supporting a continuous under wire free at one end, means for supporting a continuous upper wire free at one end, means for feeding onto the under wire and between it and the upper wire fibers spaced from each other, means for drawing the under wire and the upper wire with the spaced fibers therebetween to a selected length, means for twisting the wires to lock the fibers therebetween, and means for cutting the twisted wires to

form the brush whereby the twisted wires are open at each end of the brush.

2. In a fully automatic machine for forming a brush, means for supporting an upper and a lower wire with leading portions substantially parallel and adjacent to each other, each wire being continuous with its leading portion having an exposed end, means for drawing the wires through the machine with said ends in the lead, means for feeding bristles onto the lower wire between it and the upper wire, means for twisting the wires to lock the bristles therebetween, and means for cutting the twisted wires to form the brush.

viding a means to keep the upper and lower wires parallel and adjacent to each other. The elements found in claim 2 for drawing the wires, feeding the bristles (or fibers) onto the lower wire and between the upper and lower wires, and the mechanism for twisting and cutting are repeated here.

Claim 17 [3] restates the means found in claim 16 for supporting the upper and lower wires substantially parallel and adjacent to each other and the feeding of bristles (or fibers) onto the lower wire and between the lower and upper wires. It also describes the mechanism (1) for gripping the ends of the wires by a reciprocatable and rotatable chuck; (2) for pulling the wires to a pre-determined distance; (3) remote from the exposed ends; (4) rotating the chuck to twist the wires and lock the bristles or fibers.

Plaintiff concedes that all the elements of the claimed invention were part in the public domain except the method of feeding pre-cut bristles between a pair of *moving* wires (Trans. p. 640–642); but contends the combination of such known elements performs a new and useful purpose, and rises to the standard of inventiveness required by 35 U.S.C. § 101 [4]. Defendant argues the claimed invention is anticipated by the prior art; if not fully anticipated, the advance over the prior art " * * * would be obvious at the time the invention was made to a person having ordinary skill in the art * * *." 35 U.S.C. § 103.

### PRIOR ART

The twisting mechanism as described by plaintiff's patent was well known in the brush-making machine art. It was disclosed in the hand-twisting device of the Boardman patent 1,851,537 (1932), and in the Baumgartner patent 2,234,641 (1938), which disclosed a twisting operation by mechanical rotation of a chuck and providing longitudinal movement for the chuck to compensate for the reduced length of the twisted wires.

The twisting mechanism of plaintiff's patent is fully disclosed in A. L. LeFebvre, et al. 2,542,686 (1947) (Ex. J–13).

One of the problems in the art prior to the advent of semi-automatic machines (1942) was the retaining of the bristles in position for twisting before the twisting operation commenced. H. Cave, et al. 2,358,443, (1942), claimed invention of a brush-making machine whereby a pre-cut wire is first placed on a carrier, the carrier moves to a position to receive a measured lot of bristles from a magazine; the carrier then moves to another position to receive another wire; the carrier then positions the bristles so held by two wires, between two chucks. The twisting mechanism operation then follows the conventional procedure of twisting the wires by rotating chucks that grasp them at both ends. Earlier, Lipps 1,888,352 (1932) (Ex. J–16) claimed invention for a method of supplying fibers from a hopper on to an assembly rack. The bristles were held in place by manually clamping and then applying core wires; this assembly was then manually transferred to the twisting mechanism.

A. L. LeFebvre 2,572,498 (1946) (Ex. J–12) disclosed a brush-making machine similar to H. Cave, et al.

---

3. In a fully automatic machine for forming a brush, means for supporting an upper and a lower wire with leading portions substantially parallel and adjacent to each other, each wire being continuous with its leading portions having an exposed end, a reciprocatable and rotatable chuck for gripping said ends of the wires, means for moving the chuck to pull the wires gripped thereby a predetermined distance, means for feeding bristles onto the lower wire between it and the upper wire as said wires are being pulled by the chuck, means for gripping the wires remote from the exposed ends, and means for rotating the chuck to twist the wires and lock the bristles therebetween.

4. 35 U.S.C. § 101 states: Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

The semi-automatic brush-making machines disclosed a mechanism for spreading fibers on a wire and the placing of a wire topside, so that the fibers were between two wires. In this position, the fibers held between the wires were transported to the twisting device that provided the mechanism for the final operation prior to insertion into a handle.

At the time of the filing of the Marks application, the brush-making machine art did not disclose a machine capable of making wire brushes from spools or rolls of wires, that would trap and twist fibers or bristles. Spools or reels of wire continuously fed in a machine is disclosed in a Finnish patent granted to Paavo Emil Valisalo 23,347 published July 7, 1949 and in the U. S. Patent Office September 19, 1949 (Ex. J–23). The patent describes the device as a machine for "making pipe cleaners, lamp brushes, steel brushes, Xmas decorations, etc., where cotton, nylon, or metal are used and which are fastened with 2 or more intertwining metallic core-wires." The method described by the claim is the winding of a thread about one core wire, simultaneously twisting the core-wires together. The thread is cut after the twisting operation has secured it. The patents granted to H. P. Ruf 1,801,388 (1930) (Ex.—20) for a machine making a twisted cord known as ruff cord and chenille and to Henri-Guido Le Moine 876,067 (French) applications filed June 11, 1941, published in the U. S. Patent Office October 13, 1942, for a machine making twisted fringes or coils of metal threads containing threads as fibers, also teach continuous feeding of wire into a machine.

## ANTICIPATION BY THE PRIOR ART

The use of a hopper or magazine for holding pre-cut fibers and the feeding mechanism was disclosed. The gripping device as disclosed by Marks was obvious to one skilled in the art. The vital question is, whether the means for feeding pre-cut fibers, more or less evenly spaced between an upper and lower wire substantially parallel and adjacent with each other, was either anticipated or obvious to one skilled in the art. The feeding of continuous wires from rolls was disclosed by machines designed for making chenille, pipe cleaners, etc., previously referred to. Such machines did not, however, disclose means for supporting upper and lower wires substantially parallel and adjacent to each other. The materials used in such machines were cut after twisting. The problem in brush making—of holding bristles between wires prior to twisting—was not present producing chenille or similar items.

The means described by Marks shows the wires pulled by a chuck over tension roller wheels. The upper wire passes immediately over the bristles position on the under wire to grip them between the two wires which are in tension (Marks Ex. 3—Col. 4—l. 65–68). A wire-holding fork, in an intermediate position permits the wires, holding the bristles, to pass through to a pre-determined length. The holding fork is lowered to its ultimate positions. Two jaws of a vise then move horizontally to firmly hold the wires. The twisting and then the cutting of the twisted wire ensues and completes the machine operation.

## OBVIOUSNESS AND ANTICIPATION BY THE PRIOR ART

There is little doubt the Marks machine was an advance over the prior art. It produced brushes at a faster rate than any previous brush-making machine; it did not require the degree of skill in its operation that machines, then known, demanded. Webster Loom Co. v. Higgins, 1882, 105 U.S. 580, 581, 26 L.Ed. 1177. It substantially reduced the cost of making twisted-wire brushes. The brush-making field was narrow. The relatively few manufacturers who required a machine of the productive capacity of the Marks device recognized its usefulness. Within this narrow field, the machine was commercially successful. The need was heightened by the widespread use of twisted brushes in hair curlers, and the consequent demand for a low-priced brush.

The means, disclosed in the specifications, for supporting the upper and lower wires substantially parallel and adjacent to each other appear novel and nowhere disclosed by the prior art. Claims 6, 13, 16 and 17 read too broadly in this regard and they will be read in the light of the disclosure. Schick Dry Shaver, Inc. v. R. H. Macy & Co., 1940, 2 Cir., 111 F.2d 1018, 1022; Cuno Engineering Corp. v. Meehl, 1940, 2 Cir., 113 F.2d 862, 863. The means disclosed is not found in the teaching of any of the prior art patents nor were the means obvious to one skilled in the art of brush-machine making. To this extent, the Court finds novelty in claims 6, 13, 16 and 17.

The feeder mechanism and the twisting mechanism were known to the prior art. The refinements and variations in the individual operations, as disclosed by the claims under consideration, are of no consequence and are not entitled to patent protection. Synchronizing these individual and separate operations into one continuous method of production is in a different category.

In determining the patentability of a combination of known elements, the test is whether such combination is in itself novel. Such combination must rise to the level of invention. If the net effect is to diminish that store of prior art which is public property—in the public domain—then patent protection must be denied. The Supreme Court in Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp., 1950, 340 U.S. 147, 151, 71 S.Ct. 127, 130, 95 L.Ed. 162, quoted with approval Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008.

> "The mere aggregation of a number of old parts on elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention."

The semi-automatic brush machines did not anticipate the combination referred to. In those machines, a complex mechanism was employed to transport the brush assembly and place it in position for twisting. Marks moves the brush materials along as part of the manufacturing process.

A new element in combination with old elements which performs a new, different and useful function not disclosed by the prior art, is novel. It is novel only in the combination in which it exists and functions. The inventor created an integer. The novel combination is protected in the form presented by the inventor. It is thus narrowly construed. Piggly-Wiggly Corporation v. Jitney Jungle Corporation, 1930, 5 Cir., 39 F.2d 592, cert. denied 282 U.S. 858, 51 S.Ct. 33, 75 L.Ed. 760. The range of equivalency is similarly limited and excludes everything not substantially identical with the elements disclosed by the inventor. Walker on Patents (Deller's Edition), Vol. Three, p. 1719 et seq. § 475 (cases cited and discussed). Particularly is this true where the broad claims were narrowed by the allowance of claims after rejection of original claims and an interference. Walker on Patents (Deller's Edition) Vol. Two, p. 1215 et seq. § 249

### ACCUSED DEVICE

The accused device is based on a patent issued to A. Briglia 3,112,957 (April 1960). The Marks patent was cited by the Examiner.

Defendant claims the issuance of the patent to Briglia subsequent to the issuance of the Marks patent raises a presumption of non-infringement, citing Boyd v. Jaynesville Hay-Tool Co., 1895, 158 U.S. 260, 15 S.Ct. 837, 39 L.Ed. 973. The Court noted that " * * * both applications were pending in the patent office at the same time"; since an interference proceeding was not initiated, the Court reasoned that it was the judgment of the patent office " * * * that there were features which distinguished one invention from the other." (158 U.S. at p. 261, 15 S.Ct. at p. 837) The Court then quoted with approval from Ameri-

can Nicholson Pavement Co. v. City of Elizabeth, 4 Fish.Pat.Cas. 189, Fed.Cas. No.312 where the Court stated:

"It raises the presumption that, according to the claims of the later patentees, this invention is not an infringement of the earlier patent." (158 U.S. at p. 261–262, 15 S.Ct. 837)

Cf. Matthews v. Koolvent Metal Awning Co., 1947, 5th Cir., 158 F.2d 37; Sid W. Richardson, Inc. v. Bryan, 1958, S.D. Tex., 144 F.Supp. 916, aff'd 254 F.2d 191.

■■■■ The plaintiff has the burden of establishing infringement. The issue of infringement turns on whether the accused machine invades the area of monopoly granted plaintiff. The validity of the Briglia patent is not in issue. The claims and disclosures in the Briglia patent are pertinent to the issue of infringement. Where the issue of infringement is contested the "presumption of non-infringement" has no effect. To give it weight would alter the burden of plaintiff's proof to one greater than a fair preponderance of the credible testimony. The Court rejects such concept.

The Court nevertheless determines the issue of infringement against plaintiff. The means disclosed by Marks for holding upper and lower wires substantially parallel and adjacent are absent in Briglia. In Briglia, the wires are fed over pulleys from friction-retarded spools and pass through wire-gripping jaws with bristles, there trapped, prior to twisting. The omission of this element from the Briglia machine, without introducing an equivalent avoids infringement of claims 6, 13, 16 and 17. In Miller v. Life Savers, Inc., 1933, 2 Cir., 62 F.2d 513, 516, the Court said:

"We hold that defendant does not infringe because it does not employ the curling process described in the Miller patent. * * * The defend-

ant's machine has no 'means for curling' a plastic rod of constant diameter about a post such as Miller shows * * *."

■■■ The difference in the pulling and twisting operation in Briglia also avoids the protected area of the Marks claims. In the former device, it is a simultaneous operation; in the latter, it is not. Because of this difference, the Briglia machine can produce a longer brush than the Marks machine, but the bristles are not as evenly, fully and tightly held as in the product produced by the Marks machine. Briglia was at liberty to use the prior art in a combination and did not encroach on the Marks patent.

Plaintiff urges that the differences between the patented device and the accused machine are no more than the transportation of parts and the use of equivalents. Hookless Fastener Co. v. G. E. Prentice Mfg. Co., 1935, 2 Cir., 75 F.2d 264, 267, cert. den. 295 U.S. 748, 55 S.Ct. 826, 79 L.Ed. 1693. The wires do not hold the bristles in the Briglia machine in the same manner as in Marks. The lot of bristles in Marks is held firmly between the two wires until the twisting operation begins. In Briglia, the wires hold small portions of each lot until it is trapped by the twisting operation. The use of chuck and gripping device in the Marks machine is different from the Briglia machine. The product is similar but the differences in the product are obvious.

■■■ Whether the differences are designed with a view to avoiding infringement of the Marks patent is of no significance. Reiner v. I. Leon Co., 1963, 2 Cir., 324 F.2d 648, 651. The Court finds the Briglia patent did not infringe the Marks claims.

Findings of fact and conclusions of law in accordance with this memorandum of decision signed and filed this day.