339 F.2d 557
 AMERICAN TECHNICAL MACHINE CORP., Plaintiff-Appellant-Appellee,
v.
Sylvester CAPAROTTA, d/b/a Kings Brush Co. and as Kings Brush & Mop Co., Defendant-Appellee-Appellant.
 No. 47.
 Docket 28918.
 United States Court of Appeals Second Circuit.
 Argued November 9, 1964.
 Decided December 30, 1964.
 
 John M. Calimafde, New York City, for plaintiff-appellant-appellee. Paul H. Blaustein, and Hopgood & Calimafde, New York City, of counsel.
 Samuel Brodsky, Brooklyn, N. Y., for defendant-appellee-appellant.
 Before SWAN, WATERMAN and MOORE, Circuit Judges.
 SWAN, Circuit Judge:
 
 
 1
 This is an appeal in a patent infringement suit. The patent is No. 2,742,327 which was applied for by Theodore Marks on April 20, 1951 and was issued to him April 17, 1956. We shall refer to it as the Marks patent, although by mesne assignments it is now owned by American Technical Machinery Corporation. The claims relied upon are 2, 16 and 17. They are printed in the margin.[1] Judge Mishler[2] held the claims valid but not infringed. The plaintiff has appealed from the holding of non-infringement. The defendant counter-claimed for a declaration of invalidity of the patent, and has appealed from the dismissal of his counterclaim.
 
 
 2
 Plaintiff and defendant are competitors in making and selling brushes, and plaintiff also manufactures brush-making machinery.
 
 
 3
 The Marks patent is a combination patent for a fully automatic machine for making brushes of the type commonly used in the household and in women's hair curlers. Judge Mishler's opinion clearly describes the Marks' machine as follows:
 
 
 4
 "* * * the machine is designed to produce wire-twisted brushes of varying lengths not exceeding approximately 3". An upper and lower wire are continuously fed into the machine from two spools, the upper and lower wires engage pre-cut fibers or bristles fed from a hopper; the two wires holding the fibers or bristles in a more or less firm position, are then drawn into a predetermined length; the wires holding the bristles are then twisted by a rotating chuck; the twisted-wire brush is then cut. The brush is then complete and ready for packaging, except that in some varieties handles are added."
 
 
 5
 The court found that the Marks machine was an advance over the prior art; that it produced brushes faster than any previous brush-making machine, did not require the degree of skill in its operation that machines then known demanded, substantially reduced the cost of making twisted-wire brushes, was commercially successful, and the need for a low-priced brush was heightened by the widespread use of twisted brushes in hair curlers. Such considerations are consistent with the standard of patentability in this circuit. See Reiner v. I. Leon Co., 2 Cir., 285 F.2d 501, 504, cert. den. 366 U.S. 929, 81 S. Ct. 1649, 6 L.Ed.2d 388; Lyon v. Bausch & Lomb Optical Co., 2 Cir., 224 F.2d 530, 535-537, cert. den. 350 U.S. 911, 76 S.Ct. 193, 100 L.Ed 799; The Standard of Patentability — Judicial Interpretation of Section 103 of the Patent Act, 63 Columbia L.Rev. 306, 313-16.
 
 
 6
 These findings of fact are not clearly erroneous, and we must accept them. We also accept the finding that "The means disclosed is not found in the teaching of any of the patents nor were the means obvious to one skilled in the art of brush-machine making." Accordingly, we agree with Judge Mishler's decision as to the validity of the patent.
 
 
 7
 We do not agree with his holding of no infringement. The proper test of infringement is whether the claims involved read directly on the accused machine, for "the claims measure the invention." Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 419, 28 S.Ct. 748, 52 L.Ed. 1122; see Smith v. Snow, 294 U.S. 1, 11, 55 S.Ct. 279, 79 L.Ed. 721; 3 Walker, Patents § 450, at 1681 (Diller ed.). In the case at bar the accused machine was the Briglia.[3] Judge Mishler compared plaintiff's machine with defendant's or, which is really the same thing, compared plaintiff's claims with defendant's machine but limited the claims to a range of equivalency substantially defined by plaintiff's "best mode." Both tests are erroneous; the former because it begins with plaintiff's machine and not plaintiff's claims; the latter because it too narrowly construes the protected range of equivalency.
 
 
 8
 It is true that narrow patents in a crowded field are not accorded as broad a range of equivalence as are pioneer patents, 3 Walker, Patents § 475. But here both defendant and his expert testified that all of Marks' claims in suit could be read on the Briglia machine.
 
 
 9
 Nor could Briglia's simultaneous pulling and twisting the wires be conclusive evidence of non-infringement. Marks' claims did not limit these operations to separate steps, and there was testimony that the Marks machine could also so operate. The simultaneous operation was regarded as equivalent by defendant's expert, and the twisting operation was not only known to the prior art but was thought by the trial court to be "of no consequence * * *."
 
 
 10
 Defendant is not saved by the difference in feeding wheels. Not only was defendant's mechanism thought equivalent to plaintiff's, but also both had been taught by the prior art. Besides, the mechanism was not the gist of Marks' novel combination as defined by the court.[4]
 
 
 11
 The court placed no weight on any "presumption of non-infringement" attaching to Briglia's patent. Defendant would treat that patent as establishing "more than a presumption" that the accused machine does not infringe. But the statutory presumption of validity of a patent is limited only to the existence of a patentable improvement. Cantrell v. Wallick, 117 U.S. 689, 694, 6 S.Ct. 970, 29 L.Ed. 1017. It need not be controlling once sufficient evidence of infringement of the basic patent has been introduced, as was done in the case at bar.
 
 
 12
 While we must accept findings of fact which are not clearly erroneous, we are not so limited as to erroneous views of the proper legal tests of infringement. See Up-Right, Inc. v. Safeway Products, Inc., 5 Cir., 315 F.2d 23; Hansen v. Colliver, 9 Cir., 282 F.2d 66. Here the finding of non-infringement was based on an unduly narrow definition of the patent's protection.
 
 
 13
 The decision as to validity of the patent and dismissal of the counterclaim is affirmed. The decision of non-infringement is reversed and the cause remanded for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 2. In a fully automatic machine for forming a brush having spaced sets of fibers held between a pair of twisted wires, means for supporting a continuous under wire free at one end, means for supporting a continuous upper wire free at one end, means for feeding onto the under wire and between it and the upper wire fibers spaced from each other, means for drawing the under wire and the upper wire with the spaced fibers therebetween to a selected length, means for twisting the wires to lock the fibers therebetween, and means for cutting the twisted wires to form the brush whereby the twisted wires are open at each end of the brush
 
 
 [16]
 In a fully automatic machine for forming a brush, means for supporting an upper and a lower wire with leading portions substantially parallel and adjacent to each other, each wire being continuous with its leading portion having an exposed end, means for drawing the wires through the machine with said ends in the lead, means for feeding bristles onto the lower wire between it and the upper wire, means for twisting the wires to lock the bristles therebetween, and means for cutting the twisted wires to form the brush
 
 
 [17]
 In a fully automatic machine for forming a brush, means for supporting an upper and a lower wire with leading portions substantially parallel and adjacent to each other, each wire being continuous with its leading portions having an exposed end, a reciprocable and rotable chuck for gripping said ends of the wires, means for moving the chuck to pull the wires gripped thereby a predetermined distance, means for feeding bristles onto the lower wire between it and the upper wire as said wires are being pulled by the chuck, means for gripping the wires remote from the exposed ends, and means for rotating the chuck to twist the wires and lock the bristles therebetween
 
 
 [2]
 Whose opinion appears in 229 F.Supp. 479
 
 
 [3]
 Defendant, who was then using a Marks machine, employed Briglia to invent a machine to supplant Marks. In May 1960 Briglia filed a patent application, and a patent was issued to him in 1963. Defendant owns the Briglia patent
 
 
 [4]
 His opinion (229 F.Supp. 482) says: "The vital question is, whether the means for feeding pre-cut fibers, more or less evenly spaced between an upper and lower wire substantially parallel and adjacent with each other, was either anticipated or obvious to one skilled in the art."