**DAL–BAC (PTY.), LTD., Plaintiff,**

v.

**FIRMA ASTORWERK OTTO BERNING & CO. and Approved Accessories, Inc., Defendants.**

United States District Court
S. D. New York.

June 30, 1965.

See also D.C., 244 F.Supp. 513.

Benjamin T. Rauber, New York City, for plaintiff. Samuel L. Davidson, Herbert J. Jacobi, Donald A. Kaul, Washington, D. C., of counsel.

Ernest G. Montague, New York City, for defendants.

WYATT, District Judge.

This is a motion by plaintiff Dal-Bac (Pty.) Ltd. ("Bal-Dac"), and a cross-motion by defendant Firma Astorwork

Otto Berning & Co. ("Astor") for summary judgment. Fed.R.Civ.P. 56.

The action is one for a declaratory judgment (28 U.S.C. §§ 2201, 2202) that United States Letters Patent No. 2,924,-865—a patent for a "buckle for belts or the like"—are invalid or, if valid, that the Dal-Bac product does not infringe. Approved Accessories, Inc. ("Accessories"), the named co-defendant, does not join in Astor's cross-motion.

In addition to a declaratory judgment, Dal-Bac in its one count complaint has jumbled up its cause of action by asking also for an injunction on the grounds that both defendants "have misused the patent in attempting to dominate non-patented items" (complaint, para. 17) and that both defendants "have unfairly competed" by means of intimidation through repeated threats of "expensive patent litigation" (complaint, para. 18). Dal-Bac does not move for summary judgment on this claim; thus its motion is, in effect, for partial summary judgment.

Astor, in a counterclaim, alleges that Dal-Bac is infringing its patent and seeks (1) dismissal of the declaratory judgment action and (2) an injunction against further infringement, and accounting, etc. The cross-motion by Astor seeks summary judgment, presumably on the basis of the counterclaim.

When both sides move for summary judgment, this in itself would indicate normally that there are no issues of fact to be tried. Here, each side contends that, if summary judgment be not granted in its favor, then there should be a trial. The situation is such, however, that there is no genuine issue as to any material fact and a summary judgment is appropriate.

■ In substance, Astor denies that the prior art discloses all the claims of the patent in suit and Astor further denies that the subject matter of the patent was "obvious" within the meaning of 35 U.S.C. § 103. This is merely a way of stating the legal conclusion that the patent in suit is valid. Neither the underlying facts concerning the prior art nor what the patentee did is disputed by Astor. "What the prior art was and what the patentee did to improve upon it are questions of fact. Whether what the patentee did is properly to be classified as an invention is a question of law * * * which could be decided by summary judgment." Cee-Bee Chemical Co. Inc. v. Delco Chemicals, Inc., 263 F.2d 150, 153 (9th Cir. 1958).

■ Dal-Bac says, in effect, that if its motion for summary judgment is denied, then it has other evidence of invalidity and non-infringement which could be brought out at a trial. This is certainly not a statement sufficient to raise a genuine issue of material fact.

Moreover, the claims of the patent and the prior art are understandable without the aid of expert witnesses. See Vermont Structural Slate Co. v. Tatke Bros. Slate Co., 233 F.2d 9 (2d Cir.), cert. denied, 352 U.S. 917, 77 S.Ct. 216, 1 L.Ed.2d 123 (1956).

This action is appropriate for summary judgment.

### 1.

### The Berning Patent

Rudolf Berning is the inventor of United States Patent 2,924,865 (herein referred to as the "Berning Patent") issued on February 16, 1960. Astor is the assignee of Berning and manufactures belt buckles. The patent has four claims which, in general, pertain to belt buckles adapted to be covered with fabric and worn with women's clothes. The Berning buckle is comprised of two rectangulars frame members (an upper frame and a lower frame), either one or both of which may be covered with cloth and both of which are constructed in such a manner as to permit them to be fitted over each other and thereby to be clamped together. Figure 1, below, shows the lower frame member of the Berning buckle.

518

(Figure 1)

The upper and lower frame members have central openings. Across the opening and parallel to the two shorter ends of the rectangular frame, two cross members (Figure 2 below) are immovably mounted into the lower frame (Figure 3 below).

(Figure 2)

(Figure 3)

The lower frame member is constructed with slots (Figure 1 above, numeral 5) designed to receive the end portions of the cross members (Figures 2 and 3, numeral 3). When the upper frame is fitted over the lower frame with the cross members mounted in position, the end portions (or "holding edges") cannot be seen. (Figure 4).

(Figure 4)

Each of the cross members has a tongue-like projection (Figures 2 and 3, numeral 2) directed toward the shorter sides of the rectangular frames. The projections so placed define two U-shaped threading slots with the inner sides of the frame members. The tongue-like projections are adapted to be cut to any predetermined length depending upon the thickness of the cloth to be used for the belt. The free end of the belt passes under and through one of the U-shaped threading slots, then over the cross members and down through the other U-shaped threading slot, as illustrated below (defendant's exhibit D–18):

If the tongue-like projections are cut to the correct length relative to the thickness of the material of the belt, the belt will be locked in position by the dual pressure from (a) the tongue-like projections applied to the inner side of the belt and (b) from the inner walls of the shorter sides of the rectangular frames applied to the outer side of the belt ("self-locking"). Thus if the belt is manufactured from thin cloth, the tongue-like projections will be cut in such a manner as to extend closer to the shorter sides of the rectangular frames and thus to define narrower U-shaped threading slots which will permit self-locking. Correspondingly, if thicker material is utilized, the tongue-like projections will be cut shorter (and thus smaller), rendering the U-shaped threading slots wider and permitting self-locking.

The second and fourth claims of the Berning patent envisage a similar construction to that described above, but using an integral (one piece) cross member (Figure 5, below) rather than two separate cross members (Figure 2, above).

(Figure 5)

The integral cross member is designed to rest in the lower frame member (Figure 6 below) in the same manner as the two separate cross members.

(Figure 6)

The use of the integral cross member is said to simplify the assembly of the buckle and to fortify the cross member. The threading operation is the same as described above and self-locking likewise will be achieved if the tongue-like projection is made a size appropriate to the thickness of the material of the belt.

**2.**

### The Claimed Prior Art

Dal-Bac urges that the prior art is such that the subject matter of the Berning patent "would have been obvious at the time the invention was made to a person having ordinary skill" in the belt buckle art. 35 U.S.C. § 103. To support its position it relies heavily on certain prior (and now expired) patents.

### a. The Lerma Patent

Patent 1,995,713 (Lerma), issued on March 26, 1935, has twelve claims which, in general, pertain to a fabric covered slide buckle. The buckle is comprised of two frame members designed to fit over each other (Figure 7 below).

(Figure 7)

Either one or both of the Lerma frame members can be covered with fabric. Each frame member has an integrally formed center cross bar (Figure 7, numeral 12 above), which defines two separate openings. The lower frame member is designed to receive two solid rectangular cross bars, both parallel to the integral center cross bar (Figure 7, numerals 14 and 15 above), the faces of which are, when in place, in alignment with the upper frame member. The solid cross bars have inwardly curved recesses (Figure 7, numeral 35), designed to

facilitate the insertion of both ends of a belt. The two cross bars can either be separate, or integrally formed as one unit.

The Lerma buckle contemplates that both ends of the belt are free, as opposed to Berning where one end of the belt is assumed to be fastened to the buckle. In Lerma, each free end of the belt is threaded under the buckle through the openings between the integral center cross bar and the respective solid cross bars, then back over the faces of the solid cross bars and, as eased through by the curved recesses (Figure 7, numeral 35), down through the openings defined by the inner walls of the frame members (Figure 7, numeral 36, above) and the curved recess sides of the solid cross bars (See Figure 8 below).

(Figure 8)

The belt is locked in place by the pressure of the inner side walls (Figure 7, numeral 36 above) on the top side of the belt co-acting with the pressure on the other side of the belt from both edges and the face of the solid cross bars.

If the Lerma buckle is to be constructed without an integral center cross bar (Figure 9, below), then either a cross bar with teeth (Figure 10, numeral 46 below) or a cross bar with lateral prongs (Figure 11, numeral 48 below) or a cross bar with a face constructed in an upward inverse "V", producing a sharp

edge must be used to lock the belt. Each of these alternative cross bar constructions are designed to increase the grip of the cross bars on the belt material.

(Figure 9)

(Figure 10)

(Figure 11)

b. The Hirsh Patent

Patent 1,719,469 (Hirsh) issued on July 2, 1929, has three claims which pertain to a one-piece slide buckle and strap attachment (Figure 12 below).

(Figure 12)

A flat plate (Figure 12, numeral 10 above) is pierced so as to provide two center cross bars and two outer bars (Figure 12, numeral 11 above) defining three openings. The inside walls of the outer bars have integrally formed lips with teeth directed perpendicularly to the plate (Figure 13, numeral 11, below).

(Figure 13)

The Hirsh buckle can either be used to secure two free ends of a belt or to secure one free end when the other is attached to the buckle. When both ends are free and the perpendicular teeth are directed upward, one belt end (Figure 14, numeral 12 below) is threaded over and down through the center slot around a cross bar and up through an outer slot; the other belt end (Figure 14, numeral 13 below) is passed over the teeth down through the same outer slot over both cross bars and up through the other outer slot over the teeth.

(Figure 14)

The pressure of the teeth (Figure 14, numeral 11 above) on the outer side of the belt (Figure 14, numeral 13) along with the pressure of the inner sides of the two belt ends on the face of the cross bar serve in Hirsh to lock the two belt ends in position.

An alternate method in Hirsh of securing two free belt ends is to fold over one end and stitch it (Figure 13, numerals 15, 16, 17 above). The stitched end when pulled tight over and down through the center slot around a cross bar and up through an outer slot, is thereby anchored in place. The other free end is passed over the teeth down through the same outer slot over both cross bars and up through the other outer slot over the teeth. The belt is thereby secured in the same manner as above.

If one end of the belt is permanently sewed around one or both of the central cross bars, the free end is passed through the buckle in the same manner as described above, the belt being then secured in the same fashion.

c. The Scott Patent

Patent 1,773,873 (Scott) was issued on August 26, 1930 and is described as a "garment holder". One end (End A) of a band holds a pad carrying a headed stud; the other end (End B) is free. There is a separate clasp plate (Figure 15 below) which is narrower than the

(Figure 15)

band. The clasp plate is designed so as to permit End B to be threaded from under the plate up through the open U-shaped slot (Figure 15, numeral 23 above) over the central portion of the plate (Figure 15, numerals 15, 21) and down through the open V shaped slot (Figure 15, numeral 24 above) as well as under two slight projections on the plate (Figure 15, numeral 25 above). Since the band is wider than the clasp (see Figure 16 below) the clasp is secured to End B. The band (or belt) is fastened when the headed stud attached to End A is pushed

up through the under portion of the central opening of the clasp and the stud is moved sideways to the narrower portion of the central opening (Figure 15, numeral 21). The fastened band is reproduced in Figure 16, below.

(Figure 16)

### d. The Ganz Patent

Patent 2,667,677 (Ganz), issued on February 2, 1954, pertains to a variety of different forms of buckles. The relevant form is reproduced below (Figure 17).

(Figure 17)

The front portion of the belt (fabric covered) is represented in the above figure as the lower rectangular frame member (numeral 24). The back portion of the belt (which may or may not be covered with fabric is represented in the above figure as the upper rectangular frame member (numerals 42, 43, 44) which is designed to fit into the lower such member. The upper frame member in the figure (back portion of the belt) has an integrally formed cross bar (numeral 45) across the center of the frame, parallel to the shorter ends of the rectangular frame and defining two openings. Two integrally formed cross bars (numeral 27) separate the two openings and likewise are parallel to the shorter ends of the rectangular frame. The faces of these two cross bars are raised about 1/16th of an inch above the rear frame, and its sides are ragged (numeral 28). The free end of a belt is passed between the ragged cross bar and the outer wall, through one of the openings from the rear, across the center cross bar and down through the other corresponding opening. The belt is secured in position by the pressure of the ragged edges of the cross bars on the inside of the belt.

### 3.

### Validity of the Berning Patent

Dal-Bac argues that the Berning patent is invalid because (1) Berning represents only a mere change in shape or form which produces no change in function; (2) the prior art was such that the subject matter of Berning was obvious to a person having ordinary skill in the art; (3) significant prior art represented by Hirsh was not before the patent office at the time the Berning patent was issued, thus (it is claimed) destroying the presumption of validity; and (4) the Berning unit is merely a "gadget" and as such unpatentable within the principles of Great A. & P. Tea Co. v. Supermarket Equipment Corp., 340

U.S. 147, 155, 71 S.Ct. 127, 95 L.Ed. 162 (1950). Dal-Bac further contends that even if the Berning patent is valid, the Dal-Bac product does not infringe because its center section is substantially identical with the prior art.

Astor argues (memorandum in support of cross-motion, page 3) that the Berning "special cross member" with tongue-like projections (forming U-shaped threading slots), capable of being cut to different lengths depending upon the thickness of the belt fabric, was not known in the art. It argues (1) that Berning solved a problem recognized by men skilled in the art in that manufacturing costs are reduced under Berning because a single die is used to form all projections and then simple cutting (rather than use of separate dies) is used to obtain the desired length of the tongue-like projections; (2) that the Berning tongue-like projections avoid the art since the structures shown in the prior art contained teeth or other irregular surfaces (which, it argues, tended to damage or destroy the belt fabric; (3) that the Berning patent avoids the art because the prior patents did not consider belts of differing fabric thickness; (4) that the holding edges of Berning represent a significant improvement over the prior art; and (5) that the Berning patent has enjoyed significant commercial success which is evidence of invention.

After full consideration, it is concluded that the Berning patent is valid because its subject matter would not have been "obvious" etc. at the time of the invention. 35 U.S.C. § 103.

■ When a patent issues, a presumption of validity attaches to that patent. The burden of establishing invalidity rests on the party asserting it. 35 U.S.C. § 282. Dal-Bac has not carried that burden.

There is no merit to the contention that the only differences between Berning and Lerma are ones of shape, or that Berning is merely the Hirsh cross members placed in the Lerma frame.

■ It may be true that Lerma and Berning have similar frame constructions, but neither the cross members of Lerma (nor those of Hirsh or Ganz) teach Berning's easily adaptable tongue-like projections. The center portion of Scott cannot be said to teach the Berning projections because the Scott center was primarily designed to receive the headed stud attached to End A; End B is secured to the clasp in Scott because the band is wider than the clasp itself. Thus the projections formed by the Scott center serve a completely different purpose and function from Berning's easily adaptable tongue-like projections.

"Benefits incidentally and accidentally accruing in the products of the prior art do not necessarily negate invention in a change in degree when the purpose is different and the results new and useful." Georgia-Pacific Corp. v. United States Plywood Corp., 258 F.2d 124, 132 (2d Cir.), cert. denied 358 U.S. 884, 79 S.Ct. 124, 3 L.Ed.2d 112 (1958).

■ Berning has taken some elements of the prior art (the frames from Lerma and Ganz, the cross bars from Lerma, Ganz and Hirsh) and combined them in such a way as to produce an inexpensively manufactured, toothless, adapatable projection which can readily be cut depending upon the thickness of the fabric of the belt. "A novel combination of old elements which cooperate with each other so as to produce a new and useful result is patentable." Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 247 F.2d 343, 347 (2d Cir. 1957), cert. denied 355 U.S. 952, 78 S.Ct. 537, 2 L.Ed.2d 529 (1958). See also Stiegele v. J. M. Moore Import-Export Co., 312 F.2d 588, 590–591 (2d Cir. 1963).

■ Additionally, the undisputed commercial success which Astor has enjoyed, while not decisive, is a factor properly to be considered in determining patentability. Georgia-Pacific Corp. v. United States Plywood Corp., above, 258 F.2d at 133.

Finally and contrary to the assertion for Dal-Bac, all the significant prior art (Lerma, Ganz and Hirsh) was before the Patent Office as disclosed by their citation in the prior art references in the patent as issued and in the file wrapper history (Plaintiff's exhibit P–2). Indeed, the Patent Office gave great thought to the prior art and initially rejected the Berning patent as unpatentable over Lerma, Hirsh and Ganz. It was not until the full significance of the adaptable tongue-like projections and corresponding U-shaped slots were shown to the Patent Office to be a significant invention that the patent issued. "The presumption of validity is entitled to particular weight when, as here, the file wrapper history discloses a careful consideration in the Patent Office before issue." Georgia-Pacific Corp. v. United States Plywood Corp., above, 258 F.2d at 133.

The Berning patent represents a "new and useful" product (35 U.S.C. § 101) which was not "obvious * * * to a person having ordinary skill in the art" (35 U.S.C. § 103) and is valid.

### 4.

#### Infringement by Dal-Bac

The next question is whether Dal-Bac's buckle (submitted herewith as plaintiff's exhibit p–3 and defendant's exhibit D–6) infringes the Berning patent.

The test is whether the claims of the Berning patent read directly on the Dal-Bac product. American Technical Machine Corp. v. Caparotta, 339 F.2d 557, 559 (2d Cir. 1964).

The Dal-Bac buckle is a three piece buckle with upper and lower rectangular frame members designed to clasp together. The third piece (which rests between the frame) is a plate with two opposite projections, the outer edges of which are parallel with the shorter edges of the rectangular frames, forming a U-shaped threading slot. The centerpiece of Dal-Bac is different from that shown in the Berning Patent (see Figure 4) only in that the center is solid (except for a stamped out circle) rather than open as in Berning. The outer projections of Dal-Bac can be as easily cut to different sizes as the projections shown in the Berning patent. The U-shaped threading slots are exactly the same as Berning's. The Dal-Bac buckle thus is almost the exact design and serves exactly the same function as Berning's. It is clearly an infringement.

Accordingly, the motion by plaintiff for summary judgment is denied.

The cross-motion by defendant Astor for summary judgment is granted.

An order should be submitted on notice.