**MARVIN GLASS & ASSOCIATES and Ideal Toy Corporation, Plaintiffs,**

v.

**DE LUXE TOPPER CORPORATION and De Luxe Reading Corporation, Defendants.**

No. 67 Civ. 722.

United States District Court
S. D. New York.

Sept. 25, 1967.

Amster & Rothstein, New York City, for plaintiffs; By George Gottlieb, New York City.

Breitenfeld & Levine, New York City, for defendants; By Alan H. Levine, New York City.

## OPINION

BONSAL, District Judge.

Plaintiff Marvin Glass & Associates (Glass), the owner of Patent No. 3,298,-692, "Game With Action Producing Components" (the patent), issued on January 17, 1967, and plaintiff Ideal Toy Corporation (Ideal), the exclusive licensee from Glass, sue the defendants, De Luxe Topper Corporation and De Luxe Reading Corporation, alleging that the game "Silly Safari," sold by the defendants, infringes the patent. The game "Mouse Trap" is manufactured and sold by Ideal pursuant to its exclusive license under the patent.

Defendants move pursuant to Rule 56, F.R.Civ.P., for summary judgment dismissing the action on the ground that as a matter of law "Silly Safari" does not infringe the patent. Plaintiffs move pursuant to Rule 56(f), F.R.Civ.P., for a continuance of defendants' motion so that they can have discovery which they contend is necessary to oppose defendants' motion.

The patent contains three claims. Claim 1 is the broadest and reads as follows:

"A game comprising a game board including a track defining a plurality of stations and having a starting point, a plurality of *game pieces for movement along said track* from station to station in accordance with numbers selected by lot, a cage, a support for said cage adapted to maintain said cage and [sic] an elevated position above *a particular one* of said stations, and means adapted to be tripped and to initiate and perform a series of actions terminating in the dropping of

said cage to cause said cage to enclose any *game piece* which may be on said particular station." [Emphasis supplied.]

Claim 2 *is substantially the same as* claim 1 except that claim 2 defines the particular station referred to in claim 1 as a "cheese" station and specifies that the game pieces are "mouse simulating."

Claim 3 is substantially the same as claim 2 except that claim 3 specifies in detail the elements and operation of a "Rube Goldberg" type device that supports the cage and is designed to be "tripped" and to perform "a series of actions terminating in the dropping of said cage to * * * enclose and catch any mouse simulating game piece which may be on said 'cheese' station."[1]

The game "Mouse Trap" is played on a game board which has printed on it a track composed of a series of stations including a starting point, a "cheese" space, and a "turn crank" space. There is a "Mouse Trap" in the center of the board which is a "Rube Goldberg" type action mechanism. The "Mouse Trap" is unassembled at the outset of the game and is assembled by the participants in the game as the game progresses. When the trap is assembled, a cage is suspended above the "cheese" space and the cage remains in that position throughout the game except when the trap is operated and the cage is dropped. A playing piece simulating a mouse is selected by each participant and the participants take turns moving the mice along the track from station to station. The number of spaces that a participant's mouse is moved is determined by rolling a die. After the "Mouse Trap" has been assembled, a participant whose mouse lands on the "turn crank" space may turn the crank on the "Mouse Trap" to operate the trap and catch any participants' mouse that is on the "cheese" space. A participant's mouse can be caught only when it is on the "cheese" space. If the "Mouse Trap" operates properly the cage

---

1. It is apparent from the claims in the patent that if "Silly Safari" does not infringe claim 1, then it does not infringe any of the claims.

drops and traps the mouse, eliminating the participant and his mouse from the game. If the trap does not operate properly, the cage does not trap the mouse and the mouse continues in the game. The winner of the game is the participant whose mouse remains on the board after all other mice have been caught.

The defendants' game, "Silly Safari," is also played on a game board which has printed on it a track composed of a series of "footprints" (stations), one of which is a starting point, and another of which is a finishing point. The track goes through five different "wild game regions," e.g., "Lion Territory," "Hippo Area," "Elephant Country," and in the five regions the participants in the game place simulated animals corresponding to the regions, e.g., simulated lions are placed in "Lion Territory"; simulated elephants are placed in "Elephant Country." In the center of the board there is a turntable which can be rotated by hand, and a "Rube Goldberg" type action mechanism is mounted on the turntable. The action mechanism is made up of simulated animals and a simulated palm tree at the center of the turntable. A cage is suspended from the palm tree and is released when a participant in the game pushes the tail of a bird that is part of the action mechanism. The action mechanism is assembled by the participants before the game starts. A playing piece simulating a "foot" is selected by each participant, and the participants take turns moving the feet along the track from footprint to footprint. The number of spaces that a foot is moved is determined by rolling a die. When a participant's foot lands on a footprint with a white dot, the participant rotates the turntable so as to place the cage in the action mechanism over one of the simulated animals in the region where the participant's foot is located. The participant then pushes the bird's tail, causing the cage to drop. If the cage covers a simulated animal, the participant removes the animal from the board. If the cage does not cover an animal, the participant must move his foot without getting another chance to catch an animal. The first participant whose foot lands at the finishing point ends the game and gets a bonus of two simulated animals. The participant who has the most animals at the end of the game is the winner.

Defendants contend they are entitled to summary judgment on the ground that the patent and the games are simple and can be understood without the aid of expert testimony, and that a comparison of "Silly Safari" with the patent shows there is no infringement as a matter of law. At oral argument in support of defendants' motion, defendants' attorney demonstrated the manner in which "Silly Safari" and "Mouse Trap" are played, pointing out the differences between the two games.[2]

Plaintiffs contend that "Silly Safari" infringes because it captures "the spirit and essence" of the patent and further contend that to oppose defendants' motion it is necessary for them to have discovery, first of a principal of the defendants to determine who created, designed and engineered "Silly Safari,"[3] and, second, of those persons who created, designed and engineered "Silly Safari" to determine:

a) the one or more ways in which "Silly Safari" may be played; b) the function of certain components in "Silly Safari"; c) whether the concept of "Silly Safari" and "Mouse Trap" are the same, and, d) whether "Silly Safari" was copied from "Mouse Trap".

2. Also at oral argument, in response to a question from the court, counsel agreed that "Silly Safari" and "Mouse Trap" compete with each other in that they are sold in the same stores and use the same chain of distribution.

3. Plaintiffs point out that the deposition of the president of defendant De Luxe Topper Corporation was noticed for June 13, 1967 but was postponed at the request of defendants' attorneys, and in the interval defendants moved for summary judgment.

For the following reasons, defendants' motion for summary judgment is granted and plaintiffs' motion is denied.

### Defendants' Motion for Summary Judgment

■ Although the question of whether a patent is infringed is often a question of fact (see, e.g., Nicholl, Inc. v. Schick Dry Shaver, Inc., 98 F.2d 511 (9th Cir. 1938)), here the defendants' game, "Silly Safari," can be readily understood without the aid of expert testimony and compared with the claims described in the patent, and from this comparison it is clear that "Silly Safari" does not infringe the patent. Accordingly, the defendants are entitled to summary judgment. See Steigleder v. Eberhard Faber Pencil Co., 176 F.2d 604 (1st Cir.), cert. denied, 338 U.S. 893, 70 S.Ct. 244, 94 L.Ed. 548 (1949); Alex Lee Wallau, Inc. v. J. W. Landenberger & Co., 121 F.Supp. 555 (S.D.N.Y.1954); Rubinstein v. Silex Co., 73 F.Supp. 336 (S.D.N.Y.1947); see also United States v. Esnault-Pelterie, 303 U.S. 26, 30–31, 58 S.Ct. 412, 82 L.Ed. 625 (1938); Bridgeport Brass Co. v. Bostwick Laboratories, Inc., 181 F.2d 315, 316 (2d Cir. 1950).

The only similarities between "Mouse Trap" and "Silly Safari" are that they are played on a track printed on a board with playing pieces which move along the track in accordance with the roll of a die. Games with these features are as old as backgammon and there would be little novelty in a patent covering such a game. In addition, the games are similar in that both have a cage suspended above the board by a "Rube Goldberg" type action mechanism which, when operated, causes the cage to drop to the board.

On the other hand, there are the following differences between "Mouse Trap" and "Silly Safari":

1) The cages which are suspended above the boards differ in their function, viz., the cage in "Mouse Trap" catches playing pieces which move along the track whereas the cage in "Silly Safari" catches animals which do not move, and in their operation, viz., the cage in "Mouse Trap" is stationary whereas the cage in "Silly Safari" is movable;

2) the object of "Mouse Trap" is to eliminate the playing pieces of the other participants in the game whereas the object of "Silly Safari" is to catch more animals than the other participants;

3) the object of "Mouse Trap" is inconsistent with the use in "Silly Safari" of a movable cage to catch stationary animals, while the object of "Silly Safari" is inconsistent with the use in "Mouse Trap" of a stationary cage to catch moving playing pieces;

4) the "Rube Goldberg" type action mechanisms operate differently, have different components, are constructed differently and perform different functions in the two games.

■ In considering whether there is infringement, it is essential to compare the claims in the patent with "Silly Safari" (see American Technical Machine Corp. v. Caparotta, 339 F.2d 557 (2d Cir. 1964), cert. denied, 382 U.S. 842, 86 S.Ct. 65, 15 L.Ed.2d 83 (1965)), and when this comparison is made, it is clear that the patent cannot be read to cover "Silly Safari." Claim 1 of the patent covers a game in which the playing pieces that are trapped move along a track, and in which the cage that traps the playing pieces is fixed "above a particular one" of several stations on the board. These features are not found in "Silly Safari"[4] and are inconsistent with the object of "Silly Safari," viz., to catch the most animals.

■ Since the claims of the patent cover a combination of elements, "Silly Safari" infringes only if it includes all

---

4. In "Silly Safari" the animals that are trapped do not move along the track, and the cage that traps the animals is moved from place to place on the board.

the essential elements of the patent claims. See, e.g., Entron of Maryland, Inc. v. Jerrold Electronics Corp., 295 F. 2d 670 (4th Cir. 1961); Q–Tips, Inc. v. Johnson & Johnson, 207 F.2d 509 (3d Cir. 1953), cert. denied, 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086 (1954); Brandt-jen & Kluge, Inc. v. Joseph Freeman, Inc., 89 F.2d 25 (2d Cir. 1937). The only elements found in "Silly Safari," however, are a cage, supported over a game board by a "Rube Goldberg" type action mechanism which causes the cage to drop to the board when it is operated, and a track upon which game pieces move in accordance with the roll of a die. The claims in plaintiffs' patent are not sufficiently broad for these similarities to constitute infringement, and the protection afforded plaintiffs by the patent is limited to the claims therein. See Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 419, 28 S. Ct. 748, 52 L.Ed. 1122 (1908); American Technical Machine Corp. v. Caparotta, supra.

■■■ Plaintiffs contend, however, that "Silly Safari" infringes the patent under the doctrine of equivalents. See Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). This contention is without merit since the object of "Silly Safari" and the way the game is played are substantially different from the object of the game described in the patent and the way that game is played. Compare Chicago Patent Corp. v. Genco, Inc., 124 F.2d 725 (7th Cir. 1941).

### Plaintiffs' Motion for a Continuance of Defendants' Motion

■■■ Plaintiffs are not entitled to a continuance of defendants' motion since the facts which they seek to ascertain by discovery are either obvious or irrele-

vant to the question of infringement. According to the defendants' description of "Silly Safari," the function of the game's components, the way the game is played, and the differences between the concepts of "Mouse Trap" and "Silly Safari" are obvious and plaintiffs have given no reason why discovery is necessary to determine these facts.[5] The way in which "Silly Safari" might be played is irrelevant since there would be no infringement unless plaintiffs could show that "Silly Safari" infringes as it is intended to be played when sold. See Kaz Manufacturing Co. v. Chesebrough-Pond's, Inc., 211 F.Supp. 815 (S.D.N.Y. 1962), aff'd, 317 F.2d 679 (2d Cir. 1963). Finally, there is no reason to permit discovery to determine whether "Silly Safari" was copied from "Mouse Trap." Although evidence of copying may be relevant in some cases to the question of infringement (see Thurber Corp. v. Fairchild Motor Corp., 269 F.2d 841 (5th Cir. 1959); Hunt Tool Co. v. Lawrence, 242 F.2d 347 (5th Cir.), cert. denied, 354 U. S. 910, 77 S.Ct. 1296, 1 L.Ed.2d 1428 (1957); Lever Bros. Co. v. Procter & Gamble Mfg. Co., 139 F.2d 633 (4th Cir. 1943); Williams Mfg. Co. v. United Shoe Mach. Corp., 121 F.2d 273 (6th Cir. 1941), aff'd, 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 1537 (1942)), such evidence is not relevant here since it is clear that the patent does not cover "Silly Safari." C. H. Dexter & Sons, Inc. v. Kimberly-Clark Corp., 292 F.2d 371 (1st Cir. 1961); Eastman Oil Well Survey Co. v. Sperry-Sun Well Surveying Co., 131 F.2d 884 (5th Cir. 1942); see Helms Products, Inc. v. Lake Shore Manufacturing Co., 227 F.2d 677, 683 (7th Cir. 1955).

Accordingly, defendants' motion for summary judgment is granted and plaintiffs' motion for a continuance of defendants' motion is denied.

Settle order on notice.

---

5. Plaintiffs do not contend that the defendants have incorrectly described "Silly Safari" or that the game is played other than as prescribed in the instructions that accompany the game. Plaintiffs do not contend either that the defendants sell other versions of "Silly Safari" that are accompanied by different instructions.