**BERCY INDUSTRIES, INC., Plaintiff,**

v.

**MECHANICAL MIRROR WORKS, INC. and Artistic Factory Products, Inc., Defendants.**

**No. 67 Civ. 3420.**

United States District Court
S. D. New York.

Oct. 2, 1967.

Kenyon & Kenyon, New York City, from plaintiff, Charles R. Brainard, Thomas L. Creel, New York City, of counsel.

Victor M. Helfand, and Mackler Brothers, New York City, for defendants, Seymour G. Mackler, New York City, of counsel.

## OPINION

BRYAN, District Judge:

Plaintiff, Bercy Industries, Inc. (Bercy), sues for infringement of a design patent on a portable illuminable mirror, unfair competition with respect to this product, and misleading designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125. The complaint seeks injunctive relief and damages. Jurisdiction is based upon 28 U.S.C. § 1338(a) and (b). Plaintiff moves for a preliminary injunction against alleged continued infringement, unfair competition and Lanham Act violation.

Plaintiff is the manufacturer of an illuminable portable travel mirror used as a cosmetic and make-up accessory which it markets under the tradename "Mirror Go Lightly." Its product consists of a two-sided rectangular mirror which rotates on a horizontal axis, mounted in a white plastic outer frame or case. One side of the rotating rectangle is an ordinary flat mirror, while the other side is a curved rectangular magnifying mirror. The plastic outer frame is rectangular, with slightly convex vertical sides. In the face of the frame are set four electric lights, two on each side, mounted in individual oval dished reflectors. The lights can be plugged in to furnish illumination for the user. A simple wire stand serves to hold the mirror upright

at a variety of angles, and folds flat against the back of the mirror when not in use. The mirror measures 13″ by 7¾″ and for traveling it fits into a soft white plastic carrying case. The product as a whole is well finished, and presents a pleasing appearance. On the front of the outer frame below the mirror, the tradename "Mirror Go Lightly" appears in black script on a silvered metal tag. The words "Bercy Los Angeles, Calif. Pat. Pend." are molded into the back of the outer frame.

Plaintiff has been engaged in marketing this product since the 1966 Christmas season and claims to have sold some 100,000 units at a total wholesale price of some $1,600,000. Plaintiff corporation was formed for the sole purpose of manufacturing and selling this product and that is its only business. The mirror with case wholesales for $16 and retails for $30.

Plaintiff claims that the design is covered by design patent #208285 issued on August 8, 1967 on a portable illuminable mirror. There is no doubt that plaintiff's product is substantially identical to the patent drawings.

The accused product is also an illuminable portable travel mirror manufactured by defendant Mechanical Mirror Works, Inc. and is to be distributed by defendant Artistic Factory Products, Inc. In appearance and design the Mechanical mirror is quite similar to the Bercy product, although it is constructed of masonite and metal, rather than plastic. The defendants' mirror is enclosed in a rectangular rotating frame mounted in a rectangular outer frame with flat sides. On the front side of the frame is a rectangular ordinary mirror, while the back mounts an oval magnifying mirror. Two separated recessed light bulbs are mounted in the outer frame on each side of the mirror, behind each pair of which is a cylindrical metal reflector. The outer frame is white with gilt trim around the edges and covering the outside of the outer frame. A folding wire stand is attached to the back of the case. No identifying marks or symbols appear on the model submitted to the court, but defendants have produced paper stick-on labels containing the words "Glamor-Glo by Brytone" which they claim will be affixed to the front of the mirror when it is sold. While not submitted to the court, a carrying case is to be provided for defendants' mirror. Defendants' mirror is quite similar in design to the Bercy mirror with somewhat larger dimensions, though the construction and finish are not of as high a quality as plaintiff's. This is reflected in the lower price of the Mechanical product which sells at wholesale for $11 as against $16 for plaintiff's product.

Mechanical Mirror Works, Inc. for many years has been in the business of manufacturing various kinds of cosmetic accessories and aids which it markets through Artistic Factory Products, Inc. under the tradename "Brytone." The mirror involved here is only one of a large number of products which Mechanical produces.

## I. Validity and Infringement of the Design Patent.

Plaintiff on this motion places major reliance upon the validity of the design patent. Defendants deny both the validity of the patent, and that their product infringes it.

### A. Infringement

A design patent relates solely to the product's appearance, and not to its methods of construction or its functional features. "The test for infringement, then, is whether the accused device produces the same aesthetic effect upon the eye of the ordinary observer as the patented design. Minor variations in a design will not save one from liability unless they be sufficient to change the overall effect upon the eye." Philco Corp. v. Admiral Corp., 199 F.Supp. 797, 805 (D.Del.1961); accord, Gorham Mfg. Co. v. White, 14 Wall. 511, 81 U.S. 511, 20 L.Ed. 731 (1872); International Silver Co. v. Pomerantz, 271 F.2d 69, 72 (2d Cir. 1959); Deller's Walker on Patents § 179, at 892 & n. 20 (2d ed. 1964). Applying

this test, there is little doubt in my mind that the appearance of defendants' mirror is so similar to the design claimed in the plaintiff's patent as to make out a prima facie case of infringement. Many of the differences between the products relied upon by defendants relate to technical features and the materials used and not to appearance; those differences that affect appearance, such as defendants' use of gilt trim, the slightly larger size of its mirror and frame, the different shape and size of the lights and apertures, and the circular rather than the rectangular magnifying mirror, do not sufficiently modify the visual effect the product has upon the ordinary purchaser to readily distinguish one from the other. Thus, I conclude that prima facie at least the design of defendants' product infringes upon the plaintiff's design patent.

### B. Patent Validity

■ The issuance of design patents is governed by 35 U.S.C. §§ 171–173. Section 171 provides that a design patent may issue for "any new, original and ornamental design." Such a patent covers the appearance of a product, and not the mechanical skills or techniques that go into its design or manufacture. See Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694 (2d Cir. 1961); Klein v. Burns Mfg. Co., 245 F.2d 269 (2d Cir. 1957).

■ Moreover, the design must be a product of invention, which means that it must satisfy the nonobviousness test of § 103 of the Patent Act of 1952, 35 U.S.C. § 103. That section provides that a patent may not be obtained "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

■■ To resolve the question of obviousness, the court must first view the prior art as disclosed by previous patents and then, on the basis of expert testimony, decide whether the new design claimed represents more than the product of a person ordinarily skilled in the trade, having knowledge of the prior art. Only after this primary determination is made, should the court turn to secondary considerations, such as commercial success or satisfaction of a long-felt need in the industry, to buttress its conclusion as to patentability. Graham v. John Deere Co., 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); see Kerr v. State Farm Life Ins. Co., 373 F.2d 62 (2d Cir. 1967); Ling-Temco-Vought v. Kollsman Instrument Corp., 372 F.2d 263 (2d Cir. 1967); Formal Fashions, Inc. v. Braiman Bows, Inc., 369 F.2d 536 (2d Cir. 1966); General Time Instrument Corp. v. United States Time Corp., 165 F.2d 853 (2d Cir. 1948).

■ It is also necessary that the new elements which differentiate the design from the relevant prior art relate to the ornamental appearance of the product, and not its functional requirements. See Hygienic Specialties Co. v. H. G. Salzman, Inc., 302 F.2d 614 (2d Cir. 1962). While it is possible to patent a design which utilizes known elements in a novel manner, see Graff, Washbourne & Dunn v. Webster, 195 F. 522 (2d Cir. 1912), the combination must show inventive skill beyond that of an ordinary technician. Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694 (2d Cir. 1961).

■ Defendants have brought to the court's attention six patents[1] which they claim anticipate plaintiff's design. None of these references, with one exception,[2] were before the patent examiner when the claim was approved, a factor which weakens the presumption of validity which normally attaches. For-

---

1. The six patents are: Musolesi—#971770 (French); Brahly—#1774314; Rauch—#763481; Lewinsohn—#1930244; Lewinsohn—#2046393; Holland—#1598821.

Excerpts from these patent claims are annexed to defendants' affidavit in opposition.

2. Lewinsohn—#2046393.

mal Fashions, Inc. v. Braiman Bows, Inc., 369 F.2d 536, 539 (2d Cir. 1966); Delamere Co. v. Taylor-Bell Co., 249 F.Supp. 471 (S.D.N.Y.1966).

Defendants' references all relate to illuminable mirrors, and teach such elements as the use of lights on either side of the mirror to provide illumination (Musolesi, Lewinsohn); cup shaped reflectors (Brahly); and use of a wire stand to hold the mirror upright (Lewinsohn). While some of these factors relate to function more than design, they present an issue as to anticipation, particularly since plaintiff has not submitted copies of the claims for the prior art references it cited. Nor has there been presented any adequate references to possibly relevant prior art from other analogous fields, such as portable luggage. Compare Philco Corp. v. Admiral Corp., 199 F.Supp. 797 (D. Del.1961).

To support its claim of patentability plaintiff has submitted the affidavits of two experts which state that they have viewed the prior art references cited by both plaintiff and defendants, and that in their opinion the Bercy design was new and original and not obvious.[3] Against this, defendants have submitted affidavits of two men experienced in the cosmetic field, one of whom is an officer of defendant Artistic, stating generally that there are marked differences between the Bercy and Mechanical mirrors which make them readily distinguishable and that the latter is not a copy of the former.[4] A third affidavit by an expert states that both mirrors are obvious developments from the prior art cited by defendant.[5] Plaintiff has not demonstrated reasonable probability of success on this issue which cannot properly be resolved from the papers presented on this motion. Compare Vacheron & Constantin-Le Coultre Watches

v. Benrus Watch Co., 260 F.2d 637 (2d Cir. 1958).

A preliminary injunction for patent infringement should not be issued unless the validity of the patent is clear and beyond question. Pacific Cage & Screen Co. v. Continental Cage Corp., 259 F.2d 87, 88 (9th Cir. 1958); Belding Hemingway Co. v. Future Fashions, Inc., 143 F.2d 216 (2d Cir. 1944); Simson Bros. v. Blancard & Co., 22 F.2d 498 (2d Cir. 1927); Zandelin v. Maxwell Bentley Mfg. Co., 197 F.Supp. 608, 610–611 (S.D.N.Y.1961).

Whatever the ultimate merits of Bercy's claim of patentability may be, plaintiff has not produced the clear and convincing proof of validity required to obtain preliminary injunctive relief against infringement. The considerable commercial success achieved by the Bercy mirror cannot overcome the possible want of invention in its design. E. g., Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694 (2d Cir. 1961); Lorenz v. F. W. Woolworth Co., 305 F.2d 102 (2d Cir. 1962). Consequently, a preliminary injunction will not be granted on the patent infringement claim.

## II. Unfair Competition

Plaintiff claims that defendants are unfairly competing with it because defendants have failed to clearly identify the source of their product and because of defendants' methods of advertising and merchandising. On this branch of the motion, of course, plaintiff may not rely upon its claimed patent.

Initially, plaintiff claims that its mirror design has acquired a secondary meaning. In order to establish secondary meaning "it must be shown that the design is a mark of distinction identifying the source of the article and that purchasers are moved to buy it because of its source." Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694

3. Affidavits of Cornelius R. Keeley and Stanley Kohlenberg.

4. Affidavits of Gerald Feller and Morton J. Rehbock.

5. Affidavit of Paul P. Perilstein.

(2d Cir. 1961); accord, Hygienic Specialties Co. v. H. G. Salzman, Inc., 302 F.2d 614 (2d Cir. 1962); Lucien Le-Long v. Lander Co., 164 F.2d 395 (2d Cir. 1947). To support its claim of secondary meaning, plaintiff points to (1) a number of favorable comments on its product in trade journals and women's columns; (2) the expenditure of over $200,000 on advertising; and (3) cooperative newspaper advertisements by retailers picturing the Bercy mirror without mentioning it by name. It urges that the Bercy mirror is known throughout the trade simply as "that mirror." What is lacking in this material, however, is any indication that the public identifies plaintiff Bercy as the source of the mirror. The fact that the producer is trying to give his product a secondary meaning does not show that the public has grasped that meaning or attributes the product to him. Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694 (2d Cir. 1961); General Time Instrument Corp. v. United States Time Corp., 165 F.2d 853 (2d Cir. 1948). Plaintiff has not shown reasonable probability of ultimate success on the secondary meaning issue.

■ In order to establish unfair competition absent a secondary meaning, plaintiff must demonstrate that defendants are palming off their product as the plaintiff's; or that defendants' practices have actually confused consumers as to the source of defendants' product; or that defendants have misappropriated plaintiff's property or goodwill. Flexitized, Inc. v. National Flexitized Corp., 335 F.2d 774 (2d Cir. 1964); Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694 (2d Cir. 1961); Norwich Pharmacal Co. v. Sterling Drug, Inc., 271 F.2d 569 (2d Cir. 1959); Pezon et Michel v. Ernest R. Hewin Associates, 270 F.Supp. 423, 427 (S.D.N.Y.1967).

■ Bercy's difficulty on this branch of its case is that in order to establish unfair competition it must first be shown that defendants have been actually competing to some substantial degree. Relying on its patent, plaintiff commenced suit before Mechanical's mirror was in production; evidently very few, if any, of its mirrors have been shipped to customers and most of its activities have been confined to interesting store buyers in the product through use of pre-production samples and some trade advertising. There is little evidence by which to judge defendants' methods of marketing their product.[6]

Bercy does not claim that defendants have attempted falsely to label their product. However, it does attack the absence of any identifying label on the Mechanical samples. Defendants, however, claim that the sample is only a hand made pre-production model and has submitted to the court the labels it intends to place on the front of its product when sold. These are adhesive-backed paper labels stating in white script on a blue background "Glamor-Glo by *Brytone*." Brytone is apparently a well established trademark of defendant. These labels in no way resemble plaintiff's metal tag nor could they be mistaken for it. No other or more permanent indication of the source of defendants' mirror will appear on the product itself. The mirror will be shipped, however, in cardboard cartons on each side of which will be printed a picture of the product and the words "Another *Brytone* Product E– 950" across the top, and " 'Glamor-Glo' Electric Mirror with Travel Case" at the bottom.

■ Plaintiff does not object to the shipping carton nor could it well do so. It contends, however, that the labels to be affixed to defendants' mirror are likely to be removed by purchasers, and thus persons who see the mirror in use will not be aware of its true source and may mistake it for plaintiff's product. Plaintiff says further the labels will not show up adequately on advertising photographs though that claim is of doubtful merit. However, since over half of Bercy's sales are by direct mail, this

---

6. There is no evidence to support a finding of any actual consumer confusion as to source.

last consideration, if it exists, is of substantial importance to Bercy. While defendants' labelling seems to be only barely adequate and might well be more striking and more permanent than that which has been chosen, the probability that confusion will result or that palming off is intended is not so great as to justify injunctive relief at this stage of the case.[7]

### III. Lanham Act.

Plaintiff's claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125, is based upon allegations of misdescription and misrepresentation by defendants of the source of their product, quite similar to those made on its unfair competition claim. Much of plaintiff's position on this score has been undercut by defendants' representation that its product and shipping cartons will be properly labelled. The remaining contention that defendant is deliberately copying the Bercy mirrors' distinctive appearance and trade dress, is precluded by my holding that plaintiff has not established secondary meaning. In view of my rulings on the patent and unfair competition claims, no injunction is warranted under the Lanham Act.

### IV.

The plaintiff's motion for a preliminary injunction is in all respects denied, without prejudice to a renewal on application if it should appear that defendants are engaging in marketing or other practices which amount to unfair competition. The temporary restraining order entered by this court on September 5, 1967, is dissolved.

The foregoing opinion constitutes my findings of fact and conclusions of law pursuant to Rule 52, F.R.Civ.P.

It is so ordered.

---

7. Plaintiff argues that even if its trade dress and appearance have not acquired secondary meaning, defendants' deliberate copying of them constitutes misappropriation of Bercy's property. This argument misses the mark. Defendants are entitled to take advantage of the goodwill of the Bercy product, but not Bercy's name or reputation. Kellogg Co. v. National Biscuit Co., 305 U.S. 111,

59 S.Ct. 109, 83 L.Ed. 73 (1938); Flexitized, Inc. v. National Flexitized Corp., 335 F.2d 774, 781 (2d Cir. 1964); Pezon et Michel v. Ernest R. Hewin Associates, 270 F.Supp. 423 (S.D.N.Y.1967). That is all defendants have tried to do here. To protect the goodwill of its product from exploitation, plaintiff must sustain the validity of its patent at trial.