**G. B. LEWIS COMPANY, Metallwerke Saar, Gunter Schanz Plastipol Kommanditgesellschaft, and Gunter Schanz, Plaintiffs,**

v.

**GOULD PRODUCTS, INC., Defendant.**

No. 67 C 63.

United States District Court
E. D. New York.

Aug. 12, 1968.

James G. Staples, Chicago, Ill. and Charles F. Young, New York City (Royall, Koegel, Rogers & Wells, New York City, and Parker & Carter, Chicago, Ill., of counsel), for plaintiffs.

Edward B. Hunter, New York City (Nolte & Nolte, New York City, of counsel), for defendant.

## MEMORANDUM AND ORDER

DOOLING, District Judge.

Plaintiffs sue upon the defendant's alleged infringement of United States Design Patent No. Des. 191,144, issued to Gunther Schanz on August 15, 1961, upon his application filed June 17, 1959. The defendant moves for summary judgment on the issues of validity and infringement and defendant's motion must be granted.

The design originated with Schanz's filing on April 26, 1958, in Germany of Gebrauchsmuster (Utility Model, or petty, patent) No. 1,776,367, issued October 26, 1958, on a storage box of plastic adapted for stacking, with front visibility and removal opening for the box contents. This first Utility patent *disclosed* every design feature of plaintiff's later United States patent except for one, later mentioned. The first Utility patent described and illustrated a rectangular open topped plastic box the front wall of which rose only to half the height of the box; the low front wall rose vertically a short distance, then was inclined outwardly (forwardly) for about three times the length of its vertical rise, and ended in a second, very short vertical rise; the top, vertical segment of the front wall was extended vertically downward to form a skirt across the entire front of the box which joined the extended sidewalls of the box at either side. A wedge-shaped inverted pocket was thus formed at the front of the box; the pocket could serve as a finger hold or drawerpull for the box. On the front of the box, on the vertical segment, an oblong frame, open at the top, was molded to accommodate a slide-in label. The top edges of the other three walls of the box were crimped outwardly to form a low outwardly offset wall segment such in dimensions that one box could be securely set on top of another in snug fit and without sideward or rearward movement. Vertical ribs were formed against the outside of the side and rear walls, running from the outwardly crimped tops at least to the bottom of the box and, preferably, below it to form feet. The *claims* of the Utility patent as filed in (apparently) May 1958 are upon structure, not upon configuration in the sense of aesthetically satisfying design. However, the claims embrace as *characterizing features* (in a plastic storage box adapted for stacking and having a front visibility and removal opening and a front handle) the vertical exterior ribs, the downward opening pocket across the front formed through sidewall extensions joining the inclined

front wall and vertical front surface, the label frame, and the vertical rise at the foot of the front wall (to equal the vertical extent of the crimp at the upper edge of the side and rear walls). Each feature is functional; no feature is described as ornamental; the external vertical ribs are wall reinforcement and intended to give one box, when stacked atop another, a secure foothold on the crimped ledge of the lower box; the structure of the front is for visibility, access and handhold; and the label frame is purely utilitarian. While design divorced from utility is not claimed for the structure, the specific structure is precisely claimed, and such "design" as the box has is claimed at least insofar as it is implicit in the structure claimed.

Between the filing and issuance of the first Utility patent Schanz registered, effective May 27, 1958, the design of the box of the first Utility patent as an industrial design under the Law of January 11, 1876, as amended. Such a registration, spoken of as a Geschmacksmuster, may be granted for an initial term of one to three years from date of filing, and the "author" has the right to request (as, in 1961, Schanz did request) that the term of protection be prolonged to a maximum of fifteen years. See Section 8. Compare 35 U.S.C. § 173 (authorizing design patents of 3½, 7 or 14 year terms at the patentee's election). The Law of January 11, 1876, protects the "authors" of "industrial designs" which are embodied in "new and original products" against "imitation" (Nachbildung) of their designs, and the remedial and punitive provisions of the copyright law are incorporated into the Law of January 11, 1876, with certain exceptions. Compare 17 U.S.C. § 5(g), (i), 37 C.F.R. §§ 202.10, 202.12; 35 U.S.C. § 171, 37 C.F.R. § 1.153(a).

On December 23, 1958, Schanz filed for and on April 2, 1959, there was issued Utility patent No. 1,786,384. The innovation claimed for this second storage box over the first Utility patent (No. 1,-776,367) was greater stability, reinforcement and strength at the front parts of the sidewalls and at the junction points of the sidewalls with the front wall through positioning "between the vertical gripping ledge and the front wall of the box, halfway inclined forward, a horizontal wall surface, or * * * ledge or the like, connecting its upper ledges with one another, which is to be as broad as possible and preferably double as broad as the edge strip of the sidewalls, outwardly recessed through crimping, on both sides of the removal opening." The second Utility patent differed from the first only in broadening the top edge of the front half-wall into a horizontal "lying wall" surface and eliminating the very short vertical rise at the upper end of the front half-wall of the first Utility patent. As the application for No. 1,786,384 states, the slope of the front wall is steepened toward the vertical, and, as the application also notes, the horizontal or lying wall surface may be curved or may be rounded into the front wall or the gripping ledge. Utility patent No. 1,786,384 claims (in a plastic storage box adapted for stacking which has a front visibility and removal opening and a gripping ledge extending downward from the lower edge of the removal opening and from sidewall to sidewall) the horizontal lying wall between the gripping ledge and the front half-wall, the lying wall to be, preferably, twice the width of outward crimp displacement of the top edge of the sidewalls. (Utility patent No. 1,786,384 does not exhibit the label frame.)

It does not appear that a Geschmacksmuster was sought or obtained for the design differences that the second Utility patent presented.

Schanz filed for his United States design patent on June 17, 1959, supplying a single perspective figure exhibiting the right side and front of the box and a part of the interior; the figure did not disclose the structure in back of the vertical handhold member across the front; the specification is not descriptive, but it refers to the figure for all details of design; a captious eye could insist that the figure does not disclose—nor the appli-

cation claim—an inclined front wall. In the oath Schanz said that the "design has not been patented in any country * * * on an application filed by me * * * more than six months before this application; and that no application for patent on this design has been filed by me * * * in any country * * * except * * * No. 1,786,384, filed December 23, 1958, the priority of which is hereby claimed, 35 U.S.C. 119." The Utility patent, No. 1,786,384, was filed as "the priority document" on July 15, 1959.

In the first Office action the Examiner expressed the view that a Utility patent was not a basis for a priority claim under 35 U.S.C. § 119, and that in United States Patent Office practice the analogue to a United States design patent was considered to be the Geschmacksmuster, since the latter related to ornamental appearance; it was indicated that where a utility and design patent can co-exist, the design application is not entitled to the earlier filing date of the Utility patent. The Examiner twice rejected the claim to a priority date, and requested a new oath; a new oath was filed which, again, recited only No. 1,786-384, and it withdrew the claim for priority. Plaintiff reopened the issue in 1967 by petitioning for a certificate of correction of the effective filing date. The Patent Office rejected the petition both on the ground originally assigned, and on the additional ground that the second German Utility patent was not for the same invention as the United States application. See 37 C.F.R. § 1.153(a).

During the prosecution of the patent the Office required the incorporation of an additional figure to complete the disclosure of the underside of the gripping ledge or pocket at the front. The figure disclosed the gripping ledge or pocket, the very small outward inclination of the front wall (less than 15 degrees from the vertical), the outward (forward) inclination of the lower portions of the extended sidewalls (between 40 and 45 degrees), and the detail of the label frame. The additional figure did not disclose new ornamental matter; it clarified the orig-

inal disclosure and (evidently) corrected the mistaken impression (produced by the original figure, now Fig. 1 of the patent) that the front wall was vertical. The Office required changes in the language generally in the direction of eliminating language that implied particular structure rather than ornament, and of locking the claim to that which was portrayed in the figures and was described in the specification as the "ornamental design for a combination storing and packing case."

The Office challenged the patentability of the design on the basis of Schultz U.S. No. 1,935,920 (1932, 1933), which exhibited an otherwise conventional four-walled bread pan, with a rolled lip, in each sidewall of which an inwardly extending stacking ledge was formed by doubling the sidewall sheet metal upon itself in a horizontal plane, resulting, in side views, in a band appearance in the plane of the sidewalls; Salome French patent No. 1,114,021 (1954, 1955), which exhibited a rectangular open-topped box with a front wall outwardly inclined and rising to about half the vertical height of the box, sidewalls extended to form with the front half-wall an approximately 90 degree arrowtip profile, a hollow rectangular wire pull-out handle attached across the apex of the front, and a slide-in label plate fastened to the downward-looking front wall; and Woods British patent No. 814,727 (1955, 1959), which exhibited an oblong open topped stacking box having outwardly inclined sidewalls the exterior top segments of which were outwardly thickened to form a holding band (like that on the familiar red clay flower pot),. having each of the two opposite long walls extended outwardly at its top-center far enough' and wide enough to accommodate the foot of the short end walls of a second box stacked atop and crossways of the first box, and having the top part of the outer surface of each stacking-ledge wall drawn farther out into a short, wide two-pocketed downswept handle. The Office stated that Schultz disclosed Schanz's overall configuration, Sa-

lome, a similarly shaped container with sloped portions at the front, and Woods, a recess portion at the rear and a shelf portion at the front, and that Schanz's design substantially followed from the teachings of the cited patents.

Schanz argued in reply that the cited patents did not separately or together possess his "ornamented unity" or disclose his design, did not *"suggest"* his design, and lacked a number of features of his design; he urged that the salient feature of his design resided in "the configuration of the front wherein a pulling ledge provided with a window extends along the entire front and arranged as shown in the drawing." Schanz questioned whether, in principle, references could be coupled or combined to anticipate a design (as, in certain circumstances, in the case of ordinary Section 101 patents). In its response the Office withdrew its challenge to patentability "in the light of applicant's remarks."

The file history does not support a contention that Schanz narrowed or altered his claim in order to secure its allowance. He secured allowance by denying the factual relevancy and theoretical availability of the Examiner's cited art, and the Examiner withdrew. Valid or invalid, the patent he obtained was a patent on his ornamental design for a combination storage and stacking case as shown in his Fig. 1 and Fig 2, the unseen side being the same as that shown in Fig. 1, and the rear, plain. Originally asking for a 3½ year patent, Schanz elected a 14 year term in response to the Notice of Allowance.

On the present motion it may be assumed that defendant knew of Schanz's boxes and meant to make boxes that would be directly competitive with the Schanz box as made and sold by plaintiff G. B. Lewis Company, and that defendant was aware of and intentionally profited by whatever interchangeability of function and similarity in appearance Schanz's and defendant's boxes possessed. It may—perhaps—even be assumed that defendant proceeded to design around the Schanz box in order to duplicate its success in trade without running afoul of its supposed patent protection. As a witness expressed it, the defendant's box "needed [to be] almost identical to * * the G. B. Lewis boxes * * * [to have the] same features. Like the stacking feature, and the hopper front, and the hanging rail, the setting, and probably the same material, same colors" (Mears 6/20/67, Tr. 11).

Defendant's box is, like Schanz's, a rectangular open-topped plastic storage box with front visibility and removal opening, and having the uppermost part of the side and rear walls outwardly offset to form a skirted bearing ledge, suiting the box to have another stacked atop it. Two boxes having so much in common must inevitably look very like each other. The out-thrust top segment of the side and rear walls gives a satisfactory banding impression of being "finished off" to the wall panels outside and inside; the front half-wall arrests attention. But each of these visual elements owes its appearance entirely to function and not at all to ornamental design, and each was known in storage box design as, in varying degrees, the patents cited by the Patent Office show—the banding effect of Schultz and Woods (British), the front half-wall of Salome (French)—as does the uncited patent to Shaw, U.S. No. 2,320,388 (1940, 1943) (showing the banding effect and the front half-wall). Schanz must be considered to have claimed that his design was "new, original and ornamental" (35 U.S.C. § 171) either by reason of features which united with the features the form of which flowed from their function to give an ornamental overall configuration, or by reason of the addition of features themselves ornamental. Nothing gratuitously ornamental appears in the box of the patent. It is a working box, and its appearance presents only those symmetries that flow from workmanlike functionality in the arrangement of the elements of a box specifically suited to its stated purposes—to be sturdy, stackable, inspectable, accessible, and labelable. The external vertical ribs of the Schanz box are strengtheners,

and they have no special appeal to the eye or mind. The snub-nosed front, with label frame, serves its multiple role of supplying a handhold, strengthening the front end of the box, and carrying an identifying card; it is not ornamental, and, if it avoids dissymmetry, that is not enough. *Cf.* Application of Carletti, 51 C.C.P.A. 1094, 328 F.2d 1020, 1022. The blunted arrowtip profile of the Schanz box is rooted in the handle function of the front end. The banded top, with its outward projection is functional, and it is familiar.

■ The Schanz box is devoid of the required patentable ornamentality. Its pure functionality deprives it of patentability under 35 U.S.C. § 171. Hygienic Specialties Co. v. H. G. Salzman, Inc., 2d Cir. 1962, 302 F.2d 614, 618; Day-Brite Lighting, Inc. v. Compco Corp., 7th Cir. 1963, 311 F.2d 26, 28, reversed, other grounds, sub nom. Compco Corp. v. Day-Brite Lighting, Inc., 1964, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669; Bliss v. Gotham Industries, Inc., 9th Cir. 1963, 316 F.2d 848, 850–851; Application of Carletti, *supra*; Bentley v. Sunset House Distributing Corp., 9th Cir. 1966, 359 F.2d 140, 145–146; Payne Metal Enterprises, Ltd. v. McPhee, 9th Cir. 1967, 382 F.2d 541, 546; Methode Electronics, Inc. v. Elco Corp., 3rd Cir. 1967, 385 F.2d 138, 141; Trimble Products Inc. v. W. T. Grant Co., S.D.N.Y.1968, 283 F. Supp. 707, 716; see Bercy Industries, Inc. v. Mechanical Mirror Works, Inc., S.D.N.Y.1967, 274 F.Supp. 157, 160–161. While the prior art of other inventors cited in the Patent Office and on the present motion does not precisely anticipate the design of Schanz (35 U.S.C. § 102), the Schanz design does not embody any unobvious ornamental advance over prior art structures. The differences of Schanz are functional, and the differences in appearance, flowing from the different mechanical arrangement of the elements of the Schanz box, are not marked by any unobvious advance in ornamental effect either in overall configuration or in applied decoration (35 U.S.C. § 103). Schultz, Salome and Shaw do not supply the Schanz box, but, from the design viewpoint, they supply the elements and make their union, as in Schanz, obvious, unless the flattened front band, carrying the label frame, is regarded as transforming the box into something new, original and unobvious in its ornamental advance. That feature, however, even ignoring its functionality, is immediately obvious from conventional index drawer and drawerpull design, and it is wholly wanting in ornamental ingenuity; no more can be said for it than that it does not offend. *Cf.* Blisscraft of Hollywood v. United Plastics Co., 2d Cir. 1961, 294 F.2d 694, 696; Bercy Industries, Inc. v. Mechanical Mirror Works, Inc., *supra*, 274 F.Supp. at 161 [headnote numbers 8, 9]. It is, moreover, an element of the design which is far removed from the parallel element of the allegedly infringing design.

Defendant's box shares so much of function with the box of Schanz, and the extent of the dominance of function in determining the appearance of both boxes (and—consequently—their similarity) is so great that the relevant ornamental features of the two boxes are minor in effect. Necessarily disregarding what both boxes have in common with Schultz, Salome and Shaw—that is, what flows from their both being boxes with front visibility and removal openings (or half-walls) as are Salome and Shaw— what remains is too widely different for defendant's box to constitute an infringement of the ornamental features of the Schanz box that are new in Schanz.

The boxes of defendant and Schanz share the banding effect about the top of the side and rear walls, produced by the outward displacement of the top part of the wall that performs the function of providing a stacking ledge secured against sideway or rearward movement. They share the half-open front. These two elements are common functional characteristics of boxes of the class to which both belong and in neither box are the elements integrated in any new overall ornamental idea for such a box unless it be supposed that Schanz does so

by furnishing decoratively related pilasters in the outsides of the sidewalls, by proportioning the width of the horizontal lying wall at the base of the visibility —removal opening to the vertical height of the outthrust retaining wall of the stacking ledge, and by using a blunted or flattened front edge that carries out an overall impression of architectural stability. The obstacles to so regarding the Schanz box are that in Schanz the elements are all functional, and that the added elements are not present in defendant's box. Defendant does not use pilasters but keystones on the outsides of the side and rear walls of its box; defendant's pilasters are inside its box, a radical ornamental departure; defendant's pilasters, too, appear to be functional [see Gould U.S. Patent No. 3,347,394 (1966, 1967) column 2, lines 14–19, 62–69].

Defendant, again unlike Schanz, does not use a blunted or flattened front edge, nor a front hand-hold element that extends from sidewall to sidewall. Defendant uses a tab or tongue that extends angularly downward from the center of the foot of the visibility-removal opening; the angle of down-thrust of the tab or tongue is the angle at which the sidewalls descend to the front of the box. The Schanz sidewalls are extended to the front edge and form the sidewalls of the inverted, wedge-shaped hand-hold opening; defendant steadies its tab or tongue by providing recessed, triangular bits vertical to, and at the angle formed by the junction between, the outwardly inclined front wall and the downwardly thrusting tab or tongue. The Schanz box front prominently incorporates a slide-in label frame; defendant's tab or tongue has no such frame. The side-view profiles of the two boxes, the front view, and views taken at an equal angle to front and side and from both above and below the plane of the bottom of each box, all these views of the boxes disclose that they differ materially in structure and configuration, and differ materially in those structural elements that may be thought to have ornamental

effect. The boxes are not merely distinguishable from each other, they are stackable front visibility and removal boxes of different designs.

■■ The test of infringement for a design patent remains what it has been since Gorham Mfg. Co. v. White, 1871, 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 that is, "[i]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." See Tappan Co. v. General Motors Corp., 6th Cir. 1967, 380 F.2d 888, 891. Bercy Industries, Inc. v. Mechanical Mirror Works, Inc., *supra*, 274 F.Supp. at 160–161. The test must, however, be understood to refer to resemblance in patentable design. Infringement is not evidenced by a showing of confusion that is more readily assignable to the interchangeability in function of the two articles, or from the modesty and recessiveness of the role that patentable ornamental design plays in their appearances as contrasted to the dominant similarities of appearance that flow from the functional characteristics that give the two articles industrial specificity. If users mistook defendant's article for plaintiff's in the present case, there is no evidence that similarity in ornamental appearance produced the mistakes and, as a matter of law, there was not any similarity to the ornamental elements of the design in plaintiff's Schanz patent to support a charge of infringement by defendant's article.

■■ It must be concluded that the Schanz United States Patent Des. 191,144 is invalid for want of the unobvious novelty required by 35 U.S.C. § 103 and because it lacks the new and original ornamentality of design, differentiable from the symmetries implicit in its functional elements, that is required by 35 U.S.C. § 171; and it must be further concluded that defendant's box (as exemplified in Exhibits 7 and G) would

not infringe plaintiff's Schanz patent if that were a valid patent.

█ Independently of the invalidity of the patent under 35 U.S.C. §§ 103, 171, Schanz was not entitled to the patent because the invention had been first patented by Schanz in Germany, before he applied for a patent in this country, on applications for gebrauchsmuster and geschmacksmuster patents filed in Germany more than six months (and, indeed, more than twelve months) before Schanz filed his United States patent application. 35 U.S.C. §§ 102(d), 172; cf. 35 U.S.C. § 119.

█ It is not necessary to discuss the second Utility patent (gebrauchsmuster), for it is idle to argue that if the American patent embodies a patentable design, that design was not *qua* design fully disclosed and claimed as structure in the first Utility patent and as design in the geschmacksmuster. Hence it is immaterial whether or not it is right for the Patent Office to deny the priority date of a gebrauchsmuster to an American design application without even stopping to inquire whether the gebrauchsmuster in the particular case may not be in essential substance a patent claiming matter that constitutes a design having unobvious ornamental originality even though the structure is also mechanically obvious and evinces easily avoidable functionality. *Cf.* Bliss v. Gotham Industries, Inc., *supra,* 316 F.2d at 851; Blisscraft of Hollywood v. United Plastics Co., *supra,* 294 F.2d at 696, 697; Regent Jack Mfg. Co. v. United States, 1961, 292 F.2d 868, 155 Ct.Cl. 222. Article 4 E(1) of the Convention of Paris, as revised at Lisbon, 1958, may be thought to accept the idea that a Utility patent in one country may inure as a design patent in another country and, in that contemplation, to provide that the priority period shall be that applicable to design patents (e. g., 35 U.S.C. § 172) and not that applicable to ordinary patents [e. g., 35 U.S.C. §§ 119, 102(d)]. But it is plain in this case that it would be of no use to plaintiff to rely on the second Utility patent for any purpose, and certainly not for the priority advantage of any ornamentality that it presented and that could be considered as patentable over the first Utility patent and the geschmacksmuster registration.

The critical question is whether either or each of the earlier German filings, the first Utility patent or the geschmacksmuster registration, is "an application for a patent for the same invention." (35 U.S.C. § 119), or whether "the invention" of the American application was "first patented" by Schanz when he obtained the first Utility patent or effected the geschmacksmuster registration. The Patent Office Board of Appeals has twice held that German geschmacksmuster registrations are to be treated as patents in applying Section 102(d) as modified by Section 172 in the case of design filings notwithstanding that the geschmacksmuster registrant can and does elect to have the application "sealed" for the full term of the registration (Ex parte Einfalt, 1966, 155 USPQ 529; Ex parte Weiss, 1967, 852 O.G. 255), and even though geschmacksmuster registrations are recognized as being comparable to copyright protection. Ex parte Weiss, *supra.* *Cf.* Ex parte Marinissen, 1966, 155 USPQ 528. Surely the Board of Appeals is on sound ground.

The Congressional concern is twofold, to limit the time allowed for applying for limited-term statutory design protection, and to permit applicants who make their first filings abroad to back-date their American applications to their foreign dates, provided the back-dating does not exceed six months. Such a concern is not related to the particular form of foreign right obtained so long as it gives practically comparable protection to the same class of interests that the patent right protects in the same general way— by granting to the creative person for a limited period of time the exclusive right to exploit his creation. In the broader area that includes design protection the contrasting modes of protection, displaced somewhat, too, in the range of interests protected, are the techniques of unfair competition and trademark registration,

intrinsically unlimited in time of protection. *Cf.* Gorham Co. v. White, *supra.* It would be surprizing if statutory limited term protection through patent rights were the same the world over, and surprizing, too, if, in the borderline case of aesthetically significant industrial design, which may reside in the configuration of an article the visually dominant structure of which may be dictated by function, all systems of law presented the same detailed legal solution to the problem of giving limited term statutory protection to industrial design originality regarded as distinct from any mechanical originality in articles. Even within the United States system it is acknowledged that the patentability of an article does not bar copyright of the article as a work of art; the Court noted that, "Neither the Copyright Statute nor any other says that because a thing is patentable it may not be copyrighted. We should not so hold." Mazer v. Stein, 1954, 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630. And it has been only with difficulty that principles of unfair competition have been redefined in their relation to the limited term statutory grant of patent rights. Sears, Roebuck & Co. v. Stiffel Co., 1964, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661; Compco Corp. v. Day-Brite Lighting, Inc., *supra.*

While the theoretical differences between patent and copyright are clear and significant, in the narrowed context of industrial design protection the differences diminish in practical consequence: the risk is imitation, copying, and not unimitative invasion of the lawful monopoly area; infringement and patentability must tend to be scrutinized by techniques closer to those of copyright (concerned with originality and plagiarism) than is usual in patent law. Where the problem is the present one, application of Section 102(d), the important consideration is that appropriate industrial design protection was first sought abroad; that started the time for seeking appropriate American industrial design protection. *Cf.* 17 U.S.C. §§ 9, 22–24. It is not reasonable to

suppose that Congress contemplated that the limited term statutory protections of a Utility patent and a geschmacksmuster registration could be obtained abroad on an industrial article and the article then be exploited abroad indefinitely without loss of the right to seek design patent protection in the United States. So to conclude would make 35 U.S.C. §§ 102(d), 119, and 172 inept and arbitrary in their operation, and would frustrate a large part of their evident purpose. *Cf.* American Infra-Red Radiant Co. v. Lambert Industries, Inc., 8th Cir. 1966, 360 F.2d 977, 993–994.

It is concluded that defendant is entitled to summary judgment on the complaint and first counterclaim. See Monaplastics, Inc. v. Caldor, Inc., 2d Cir. 1967, 378 F.2d 20; Methode Electronics, Inc. v. Elco Corp., *supra*, 385 F.2d at 139–140, 141; C-Thru Products, Inc. v. Uniflex, Inc., 2d Cir. 1968, 397 F.2d 952; *cf.* Dal-Bac (Pty.), Ltd. v. Firma Astorwerk Otto Berning & Co., S.D.N.Y.1965, 244 F. Supp. 516, 517. There is no just reason for delay in entering final judgment on the patent claims embraced in the complaint and first counterclaim. The issues raised by the second counterclaim are peculiarly of a sort that would be better adjudicated—if they have any support in fact—after a final determination of the patent issues.

Accordingly, it is

Ordered that defendant's motions for summary judgment on the claims set forth in the complaint and first counterclaim are granted and, it having been found that there is no just reason for delay in entering final judgment on such claims the Clerk is directed to enter final judgment in favor of defendant and against the plaintiffs above-named (1) on the complaint that plaintiffs take nothing by their complaint and that their action is dismissed on the merits, and (2) on the first counterclaim that United States Letters Patent Des. 191,144 are invalid and that defendant did not infringe the said Letters Patent, and (3) for costs, as taxed by the Clerk.