LE CORDON BLEU s. a., formerly known as Le Cordon Bleu S. a. r. l., Plaintiff,

v.

Mary Lou LITTLEFIELD and Richard Littlefield, as Executors of the Estate of Anna Muffoletto, and Anna Muffoletto's Cordon Bleu of New York, Ltd., Defendants.

No. 75 Civ. 5977 (KTD).

United States District Court, S. D. New York.

May 11, 1981.

Lloyd I. Isler, New York City, for plaintiff.

Bradley B. Davis, New York City, for defendants.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

Since 1895, plaintiff Le Cordon Bleu, S.A., a French corporation, has owned and operated a gourmet cooking school in Paris called Le Cordon Bleu de Paris. Le Cordon Bleu de Paris prepares students to become professional chefs and also offers courses to those interested in the art of cooking for purely personal enjoyment. Certificates are awarded to those who successfully complete the school's three month course;[1] diplomas are presented to students who go on to satisfy the requirements for the six month course.[2] Those students who pursue and successfully complete the full one year course receive a "Grand Diplome," the school's highest distinction.

Plaintiff registered the trademarks and tradenames "Le Cordon Bleu"[3] and "Le Cordon Bleu de Paris"[4] with the United

1. Certificat de Cuisine Elementaire.

2. Diplome.

3. Registration number 786,557 (March 9, 1965).

4. Registration number 954,227 (February 27, 1973).

States Patent and Trademarks Office in 1965 and 1973, respectively, in connection with courses and lectures in cooking and oenology. In 1969, plaintiff designated Richard Grausman as its exclusive United States representative. Since then he has offered a program of cooking demonstrations in department stores in several major United States cities, including New York.

Defendant Anna Muffoletto's Cordon Bleu of New York, Ltd. is a New York corporation which has engaged in teaching cooking skills since 1970. The corporation offers cooking courses only through its Manhattan school. Its attempt to develop a summer school in Bridgehampton, New York was unsuccessful. Ms. Muffoletto, the founder of the school, was a defendant in this action until her death in 1977. At that time her executors, Richard and Mary Lou Littlefield, were substituted as defendants.

Anna Muffoletto was at one time a commercial dietician for the Howard Johnson chain of restaurants and a home economics teacher on the high school and college level. She also attended classes at Le Cordon Bleu de Paris in the early 1960's and authored a book entitled *The Art of Sicilian Cooking*. In 1970, Ms. Muffoletto began offering cooking lessons in her Manhattan apartment under the name of "Anna Muffoletto's Gourmet Gallery." She subsequently filed a trade name certificate under the name of "Cordon Bleu Cooking School of Gourmet Gallery," which was finally changed, through incorporation, to the school's current name "Anna Muffoletto's Cordon Bleu of New York, Ltd." In 1973, Anna Muffoletto filed an application with the United States Patent and Trademarks Office for registration of the mark "Anna Muffoletto's Cordon Bleu" and a logo consisting of a skillet with the words "*Cordon Bleu of New York*" appearing on the rounded surface of the skillet and the name "Anna Muffoletto" on the handle of the skillet. This application for registration

was denied on July 18, 1974, on the ground that "the mark, as used with the goods and/or services of the applicant so resembles the marks [of the plaintiff] as to be likely to cause confusion, or to cause mistake or to deceive."[5]

In 1975, plaintiff commenced this suit alleging two separate causes of action: (1) that defendant school's use of the words "Cordon Bleu" infringes upon plaintiff's trademarks and tradenames in violation of §§ 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125 and (2) that the use of the term "Cordon Bleu" in the defendant school's name and in connection with the school's business constitutes unfair competition and violates New York Gen.Bus.L. § 368–d. In addition to compensatory damages, plaintiff seeks punitive damages and a permanent injunction against certain uses of the term "Cordon Bleu" by the defendants. It is noted at the outset that plaintiff does not base its statutory claims on the name "Le Cordon Bleu School of Cooking" or the like, but merely upon the term "Cordon Bleu."

Defendants challenge plaintiff's claims on several grounds and counterclaim for the cancellation of the plaintiff's trademarks alleging that they were procured by fraudulent means.

On the basis of the testimony and documentary evidence, I find that plaintiff is entitled to relief from defendants' misappropriation of the term "Cordon Bleu" and their deliberate attempts to associate in the public's mind their school with the plaintiff's school. The defendants' claim that fraud underlies the plaintiff's registration was totally unsupported by proof and must be dismissed.

## DISCUSSION

Plaintiff first claims that its mark "Cordon Bleu" is distinctive and, therefore, the defendants should be prohibited from using the term in ways that will mislead the public into believing that Anna Muffoletto's

**5.** Decision of United States Department of Commerce, Patent Office, rejecting application of Anna Muffoletto's Cordon Bleu of New York, Ltd. to United States Patent Office for registration of trademark "Anna Muffoletto's Cordon Bleu of New York, Ltd."

Cordon Bleu of New York ["the New York school"] is in some way affiliated with Le Cordon Bleu de Paris ["the Paris school"]. Defendants dispute plaintiff's claim to such protection arguing that the term "Cordon Bleu" is generic or, alternatively, that it is merely descriptive and has not acquired a secondary meaning.

While "Cordon Bleu" may be the generic term for a high culinary standard or a good cook,[6] it is not synonymous with schools which teach gourmet cooking. "Cordon Bleu" as used by the plaintiffs is, however, a descriptive term indicative of the type of cooking skills that students may learn if they attend plaintiff's school. See Jean Patou, Inc. v. Jacqueline Cochran, Inc., 201 F.Supp. 861 (S.D.N.Y.1962).

■ Descriptive marks warrant protection from infringement only if the plaintiff can prove that the mark has a secondary meaning or that defendants are engaging in certain types of unfair competition. Bercey Industries, Inc. v. Mechanical Mirror Works, Inc., 274 F.Supp. 157 (S.D.N.Y.1967).

■ To establish secondary meaning, plaintiff must show that cooking school customers associate the mark "Cordon Bleu" with a particular cooking school. In determining whether a mark has acquired a secondary meaning or is merely descriptive, it is appropriate to consider such factors as (1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made to promote a conscious connection in the public's mind between the mark and a particular product or venture. 3 R. Callman, Unfair Competition Trademarks and

Monopolies, ¶ 77.3 (3 ed. 1970). After considering all the evidence, I conclude for the following reasons that the term "Cordon Bleu" has not acquired a secondary meaning among cooking school customers.

■ Although Le Cordon Bleu de Paris operated in France as a cooking school for nearly 90 years, no efforts were made to promote the mark "Cordon Bleu" in the United States until 1970.[7] Since then the school has offered cooking demonstrations in department stores through its one United States representative, Richard Grausman. The school also endorsed a single food product through television commercials which were shown for a short time in a limited area of the United States. The other evidence of secondary meaning which plaintiff points to includes (1) a number of favorable newspaper and magazine articles about Le Cordon Bleu de Paris, (2) the fact that certain cooking authorities list attendance at the Paris school among their credentials and (3) offers from companies to pay the plaintiff for the use of the term "Cordon Bleu" in connection with cooking schools and endorsements of various products.[8]

While plaintiff's proof is evidence that Le Cordon Bleu de Paris has acquired a reputation in the culinary arts field, it does not prove that the public associates the term "Cordon Bleu" specifically with plaintiff's school. A showing that there exists such an association is necessary for a finding of secondary meaning. See, e. g., Harlequin Enterprises Limited v. Gulf & Western, 644 F.2d 946 (2d Cir. 1981); Fund of Funds, Ltd. v. First American Fund of Funds, 274 F.Supp. 517, 524 (S.D.N.Y.1967). Mere du-

---

6. See Le Cordon Bleu, S.A. v. BPC Pub. Ltd., 451 F.Supp. 63, 72 (S.D.N.Y.1978).

7. While the term "Cordon Bleu" may have acquired a secondary meaning in France, or other countries, the only secondary meaning which is relevant in a case for infringement of a United States' trademark is that which has been acquired in the United States. See 3 Callman, Unfair Competition Trademarks and Monopolies § 76.4 (3rd ed. 1970). Plaintiff makes no claim of unfair competition or trademark infringement with regard to its French registration of the mark "Le Cordon Bleu de Paris."

8. Only one of these offers came to fruition; for a limited time plaintiff Le Cordon Bleu endorsed a food product utilized in a recipe developed by the plaintiff. In any event, it is not enough that the mark is known only to would be wholesalers or retailers of the product or service underlying the mark. See Clairol, Inc. v. Gillette Co., 389 F.2d 264, 271 (2d Cir. 1968). It is the portion of the population which is interested in cooking schools to whom the trademark message is addressed and for whom the mark must have secondary meaning.

ration of operation [9] and minimal efforts to promote the mark do not establish secondary meaning; [10] nor does media coverage of the Paris school and entrepreneurial interest in the mark.[11] This evidence proves that the *school* was widely known but does not show by a preponderance of the evidence that the public considered "Cordon Bleu" synonomous with the school.

Although secondary meaning usually is a prerequisite to trademark protection, relief is also warranted if plaintiff can establish that defendants are palming off their school as the plaintiff's or have misappropriated plaintiff's property or good will. 274 F.Supp. at 163; New York Gen.Bus.L. § 368-d. I find that plaintiff has met its burden with regard to both tests. The testimony and exhibits establish not only that defendants copied the name "Cordon Bleu," but have deliberately attempted to create the impression that their school is associated with plaintiff's school and that attendance at the New York school is a substitute for or equivalent to attendance at the Paris school.

While the term "Cordon Bleu" has not acquired a secondary meaning, there is no doubt that Le Cordon Bleu de Paris is well-known in some circles for its expertise in fine culinary arts. Anna Muffoletto was well aware of Le Cordon Bleu de Paris' reputation, having attended a number of classes there in 1959. Her actions indicate that she tried to capitalize on the commercial value the Paris school has given the term "Cordon Bleu." For instance, she held herself out to be a "graduate" of Le Cordon Bleu de Paris; in fact, she merely attended certain daily demonstration courses offered to the public for a fee and was never enrolled in a program leading to a certificate or a diploma. The Le Cordon Bleu de Paris "diploma" she displayed on the wall of her office actually was a receipt for a subscription to one of plaintiff's publications on the art of cooking. Further, Anna Muffoletto

was referred to as the "Directress" of the New York School, a title which closely resembles the title of "Directrice" given the head of the Paris school.

The facts also indicate that Anna Muffoletto's decision to incorporate the term "Cordon Bleu" into the name of her school was a deliberate imitation of the name Le Cordon Bleu de Paris. The school originally was called Anna Muffoletto's Gourmet Gallery. After consulting a friend in the catering business, however, she changed the name to Anna Muffoletto's Cordon Bleu of New York Ltd. If, as the defendants contend, the New York school's success is based on Anna Muffoletto's reputation as a fine cook, it is difficult to imagine why she substituted the term "Cordon Bleu" for "Gourmet Gallery" unless it was to take advantage of any commercial value the Paris school has given that term.

Moreover, the New York school is often identified by the defendants in their catalogue and other literature simply as "the CORDON BLEU." When the school's entire name "Anna Muffoletto's Cordon Bleu of New York Ltd." does appear, only the words "CORDON BLEU" are printed in large prominent type on the circular surface of the skillet. The words "of New York Ltd." appear in small type below "CORDON BLEU;" "Anna Muffoletto" is printed in small letters on the narrow black handle of the skillet.

The New York school's listing in the Manhattan telephone directory also sometimes omits Anna Muffoletto's name; the 1980 directory, for example, lists the school only as "Cordon Bleu of New York Ltd." Further, telephone calls to the school are sometimes answered "Cordon Bleu of New York" and sometimes just "Cordon Bleu."

Defendants also have imitated plaintiff's accreditation program. Like the plaintiff, defendants award a "Cordon Bleu Certificate" to students who successfully complete

**9.** See note 7, *supra.*

**10.** *See La Societe Anonyme des Parfums Le Galiear v. Jean Paton, Inc.,* 495 F.2d 1265 (2d Cir. 1974).

**11.** See note 8, *supra.*

a course of study. The defendants also promise that students who complete the "Diploma Course" will graduate as "Cordon Bleu Chefs" and receive a "Cordon Bleu Diploma."

The evidence also discloses that defendants' use of the term Cordon Bleu actually misled the public into believing that their school is affiliated with the plaintiff. The defendants admit that they receive inquiries about their affiliation with the Paris school. Richard Grausman, plaintiff's representative in the United States, also testified that many people asked him whether the New York school was affiliated with the plaintiff's school.[12] Finally, a major cookbook publisher in the United States wrote to the New York school about obtaining the right to use the term Cordon Bleu believing that the New York school was the authorized licensee of the plaintiff and had the right to use the Cordon Bleu name.

In view of defendants' deliberate appropriation of plaintiff's trade name and calculated imitation of features associated with plaintiff's school, plaintiff is entitled to relief. *See Dior v. Milton*, 9 Misc.2d 425, 155 N.Y.S.2d 443, *aff'd*, 2 A.D.2d 878, 156 N.Y. S.2d 996 (1956); N.Y.Gen.Bus.L. § 368–c. Accordingly, I grant an injunction restraining defendants from the use of the words "Cordon Bleu" either verbally or in print unless the term appears as part of the full name of defendants' school [13] i. e., Anna Muffoletto's Cordon Bleu of New York Ltd. I further order that if defendants continue to use the term Cordon Bleu in their school name, they must advise the public that defendants' school has no connection with the Paris school.

Since there is no evidence that the plaintiff has sustained any substantial damages, the defendants will not be required to account for profits and no monetary damages will be awarded to plaintiff.

---

**12.** The *New York Times*, in its annual listing of cooking schools, found it necessary to advise the reading public that defendants' school "has no connection with the Parisian cooking school," *New York Times*, September 10, 1980 and September 14, 1980, and that Richard Grausman is the "only authorized representa-

tive here" of plaintiff's school, *New York Times*, September 8, 1976.

**13.** Defendants, of course, may use the term "Cordon Bleu" in its generic or purely descriptive senses.